

FILED

Feb 08 2019, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Eric S. Pavlack
Colin E. Flora
Pavlack Law, LLC
Indianapolis, Indiana

Fred Schultz
Greene & Schultz
Bloomington, Indiana

ATTORNEYS FOR APPELLEES

Thomas W. Vander Luitgaren
Matthew S. Schoettmer
Van Valer Law Firm, LLP
Greenwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bryan Alexander, Karl Cameron, William Love, Charlie Lovins, Kevin McMurray and Matt Oelker, *on behalf of themselves and all others similarly situated*,

*Appellants/Cross Appellees-Plaintiffs,*

v.

Linkmeyer Development II, LLC, Steven Linkmeyer, and Brian Bischoff,

*Appellees/Cross Appellants -Defendants,*

February 8, 2019

Court of Appeals Case No. 18A-PL-311

Appeal from the Dearborn Circuit Court

The Honorable James D. Humphrey, Judge

Trial Court Cause No. 15C01-1307-PL-49

**Robb, Judge.**

# Case Summary and Issues

This case comes before this court as an interlocutory appeal from the parties' respective cross-motions for summary judgment. Specifically, a class of laborers ("the Class") formerly employed by Linkmeyer Development II, LLC, and its members Steve Linkmeyer and Brian Bischoff (collectively, "the Defendants"), appeal the trial court's denial of their motion for summary judgment and the granting, in part, of the Defendants' motion for summary judgment. The Defendants appeal the remaining issues for which their motion for summary judgment was denied. The parties now present several issues for our review which we consolidate and restate as two: (1) whether the trial court erred in denying the parties' motions for summary judgment on the issue of breach of contract, and (2) whether the trial court erred in denying the Defendants' motion for summary judgment regarding the Indiana Wage Payment Statutes. Concluding the trial court did not err, we affirm.

# Facts and Procedural History

Around June of 2009, Steve Linkmeyer approached the City of Lawrenceburg requesting a $3,000,000 loan to facilitate a development project on behalf of his company, Linkmeyer Development. On November 30, 2009, Linkmeyer, along with another member of Linkmeyer Development, Brian Bishoff, signed a document entitled "Development Agreement Between the City of Lawrenceburg, Indiana, and Linkmeyer Development II, LLC" ("the Development Agreement"). Appellants' Appendix, Volume II at 103. The

City of Lawrenceburg's city manager, Tom Steidel, and mayor, William Cunningham, also signed the contract.

[3] The Development Agreement involved three properties: the Ellis property, the Walters property, and the Tanners Creek property. According to its terms, the City of Lawrenceburg would provide a $3,000,000 line of credit to Linkmeyer Development in return for the excavation and filling of the properties. Linkmeyer Development was required to purchase the Ellis property and the Walters property. The Lawrenceburg Redevelopment Commission would then convey the Tanners Creek property to Linkmeyer Development, some 21.5 acres of land which ran adjacent to Tanners Creek Drive, free of charge. Dirt was to be moved from the Ellis property to both the Walters property and the Tanners Creek property in order for the properties to be elevated out of the flood plain. In so doing, all three previously-undevelopable properties would become developable. Linkmeyer Development also agreed to petition the City of Lawrenceburg for the annexation of the Ellis property at the completion of the project.

[4] The loan itself was to be paid in three installments, with the first $1,000,000 to be paid at the completion of the work on the east side of Tanners Creek, the second $1,000,000 to be paid at the completion of the project, and the third $1,000,000 to be paid when the Ellis property was successfully annexed. The $3,000,000 was loaned for a maximum of five years with an annual interest rate of 2%. Steidel prepared the Development Agreement using a form document

that he generally used in connection with loans made by the City of Lawrenceburg.

[5] Under "Section II" entitled "Responsibilities of the Developer" the Development Agreement stated:

> The Developer must begin the project on or before August 1, 2009 and complete the project by October 1, 2010. Developer shall comply with all appropriate codes, laws and ordinances including the payment of prevailing wages for labor as required by the State of Indiana and the City of Lawrenceburg. The Developer shall provide a final set of engineering plans and a final project construction cost estimate that shall be attached to, and become a part of, this agreement.
>
> * * *
>
> The Developer(s) and their spouses must agree to sign personal guarantees for the amount borrowed as well as provide first mortgages for both the Ellis Properties and any city owned land that is conveyed to the Developer as part of this agreement. In, addition, they must agree to sign any other documents that may be appropriate to ensure that the City investment is secure.

Appellants' App., Vol. II at 46-47.[1]

[6] Consistent with the Development Agreement, the parties executed several additional documents, including a Promissory Note and a Mortgage in favor of

---

[1] An Addendum to the Development Agreement was executed on November 30, 2009 "[e]xtending the time line to complete the project to October 1, 2014." *Id.* at 52.

the City of Lawrenceburg on the Tanners Creek and Ellis properties. Additionally, Bischoff, Linkmeyer, and both of their spouses, executed a personal guaranty. The guaranty stated:

> ln consideration of the extension of credit by The City of Lawrenceburg, Indiana . . . ("Lender") to Linkmeyer Development . . . ("Debtor") and other good and valuable consideration, the receipt of which is acknowledged [by] the undersigned, jointly and severally if more than one, hereby guarantee to Lender the prompt performance and payment of all indebtedness, interest, principal, liabilities and obligations of Debtor to Lender pursuant to Debtor's Note . . . in the principal amount of $3,000.000.00, Mortgage of Real Property ("Mortgage"); and Development Agreement ("Development Agreement") . . . . This is a Guaranty of payment and performance, including all collection efforts. Without limiting the foregoing, the undersigned, absolutely, irrevocably and unconditionally indemnifies and saves Lender harmless from and against all liabilities, suits, proceedings, actions, claims, assertions, charges, demands, delays, injuries, expenses (including reasonable attorney fees and disbursements) which are incurred by Lender as a result of any allegation determination or that the Obligations involve a fraudulent conveyance, transfer or obligation under federal or state law.

*Id.* at 116.

[7]     At the completion of the project, Linkmeyer Development made the first few payments on the loan but eventually defaulted. On July 3, 2013, the six

individuals now composing the Class,[2] filed a complaint in Dearborn County Circuit Court alleging that a Lawrenceburg City Ordinance was incorporated by the Development Agreement and that the ordinance required the payment of prevailing wages. Entitled "Contractors Required to Pay Prevailing Wages," Lawrenceburg Code Section 33.02 provides:

> On any construction project approved by the Lawrenceburg Development Corporation and financed in whole or in part by proceeds from sale of economic development bonds, grants or approved by or financed through any city agency, board, committee or commission, pursuant to an Investment Incentive Program, contractors retained to complete the project shall be required to pay the employed on the project wages equal to the prevailing wage customarily paid to each class of worker engaged in similar work in Lawrenceburg and surrounding areas.

> ('94 Code, § 33.02) (Ord. 1-1986, passed 4-7-86).

Pursuant thereto, the Class brought the following claims:

Count I:      Breach of Contract

Count II:     Violation of the Indiana Common Construction Wage Act

Count III:    Violations of Indiana Wage Statutes

---

[2] The trial court certified the Class on December 26, 2014.

Count IV:   Request for Declaratory Relief

Count V:    (Pleaded in the Alternative) Unjust
            Enrichment/Quantum Meruit

Appellants' App., Vol. II at 37-41. The Defendants answered, arguing that neither the Development Agreement nor Section 33.02 required the payment of prevailing wages.

[8]     During a telephonic pre-trial conference on May 15, 2017, the trial court agreed with the parties' joint request that liability be addressed by way of cross-motions for summary judgment, rather than a bench trial. On June 5, the Class filed its motion for partial summary judgment along with a brief and designation of evidence in support thereof, requesting summary judgment in its favor on Count I: Breach of Contract. *See id.* at 71-96. On July 13, the Defendants filed their reply in opposition to the Class's motion for partial summary judgment and their cross-motion for summary judgment, requesting that the trial court deny the Class's partial motion for summary judgment and grant the Defendants' summary judgment as to all claims. The Class then filed a combined reply and response and the Defendants filed a reply.

[9]     On September 12, the trial court held a hearing on the parties' respective motions for summary judgment and took the matter under advisement. Soon thereafter, the trial court issued an order denying the Class's motion for partial summary judgment and granting the Defendants' cross-motion for summary judgment in part and denying in part. The order provided:

> The Court hereby denies [the Class's] Motion for Summary
> Judgement [sic] as to Count I — Breach of Contract and Count
> III — Violations of Indiana Wage Statutes. The Court grants
> Defendant's [sic] Motion for Summary Judgment as to the Count
> V - Unjust Enrichment/Quantum Meruit. In all other respects,
> Defendant's [sic] Cross Motion for Summary Judgment is
> denied.

Appealed Order at 1-2.[3]

Agreeing this matter was suited for summary disposition, the parties jointly sought and obtained certification for interlocutory appeal from the trial court and we granted the parties' joint interlocutory appeal request on March 16, 2018.[4]

# Discussion and Decision

## I. Motion to Strike

Before preceding to the merits of this appeal, we must first address the Class's motion to strike portions of the Defendants' Reply Brief. Indiana Appellate Rule 42 provides:

> Upon motion made by a party within the time to respond to a
> document, or if there is no response permitted, within thirty (30)

---

[3] Our review of the record reveals the Class only moved for partial summary judgment as to Count I: Breach of Contract. *See* Appellants' App., Vol. II at 71-96.

[4] The trial court's grant of summary judgment in favor of the Defendants on Count V: Unjust Enrichment/Quantum Meruit is uncontested on appeal.

days after the service of the document upon it, or at any time upon the court's own motion, the court may order stricken from any document any redundant, immaterial, impertinent, scandalous, or other inappropriate matter.

[12] The Class begins by asking that we strike four portions of the Reply Brief in which the Defendants assert that the Class raised a new argument "that prevailing-wage statutes are remedial and are to be construed liberally." Appellants/Cross-Appellees' Motion to Strike Portions of Appellees/Cross-Appellants' Reply Brief at 1. This argument centers around the following paragraphs in the Class's reply brief on appeal:

> In construing Section 33.02, it is important to recognize that "[a] prevailing-wage statute is remedial in nature and should be applied liberally to carry out its purpose. Exceptions to prevailing-wage statutes must be narrowly construed." 51B C.J.S. § 1331 (2010). Further, the purpose of prevailing-wage laws is to "safeguard workers' efficiency and general well-being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to efficiency and well-being." 64 AM. JUR. 2d Public Works and Contracts § 214 (footnote omitted).
>
> * * *
>
> Should any doubt remain, it should be resolved in favor of the Class as "[a] prevailing-wage statute is remedial in nature and should be applied liberally to carry out its purpose." 51B C.J.S. § 1331. And the purpose of prevailing-wage laws is to "safeguard workers' efficiency and general well-being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to efficiency

and well-being." 64 AM. JUR. 2d Public Works and Contracts § 214 (footnote omitted).

Appellants' Reply and Cross-Appellees' Br. at 29-30, 35-36.

[13] The Class argues that it raised this argument in its reply brief on summary judgment. Indeed, our review of the record reveals that the Class presented the first of the two paragraphs verbatim and the second paragraph is merely a derivative thereof. *See* Appellants' App., Vol. III at 144-45; *Spudich v. Northern Ind. Public Serv. Co.*, 745 N.E.2d 281, 285-87 (Ind. Ct. App. 2001) (holding new arguments can be raised in a reply brief on summary judgment), *trans. denied*. In response, the Defendants concede that the Class made such an argument in its reply brief on summary judgment but nevertheless maintain:

> When the Class mentioned 51B C.J.S. § 1331 in their summary judgment reply brief, they *cited* to it as a general standard of review when interpreting a prevailing wage ordinance in general. On the other hand, in their final appellate submission, they cited to it twice and *argued* it for the first time relative to their argument on the application of the Investment Incentive Plan.

Response in Opposition to Appellants/Cross-Appellees' Motion to Strike Portions of Appellees/Cross-Appellants' Reply Br. at 2, ¶ 4.

[14] As the Defendants now acknowledge, the Class presented 51B C.J.S. § 1331 as a "general standard of review when interpreting a prevailing wage ordinance in general." *Id.* It is entirely consistent then, and well within the perimeters of their previously raised argument, for the Class to apply this general standard to

a specific issue within the ordinance—such as the application of the investment incentive plan. That being said, we also recognize the nuance of the Defendants' argument, however inartfully presented. Because the Defendants presented a good faith argument and never expressly alleged that the Class's argument was waived, we decline to strike the relevant portions of the Appellees/Cross-Appellants' Reply Brief.

[15] Next, the Class asks that we strike several of the Defendants' statements regarding the Class's construction of Section 33.02 of the Code of Lawrenceburg. Specifically, the Class takes issue with the following paragraphs of the Defendants' argument:

> [The Class] included words and punctuation in their diagram of §33.02 during the summary judgment proceedings which were not present in the ordinance. In doing so, they advanced an argument that completely defeated their construction of §33.02 as the proper one because it would result in the payment of prevailing wages on "*all*" construction projects approved by the city. When confronted with the erroneously broad interpretation of §33.02, they then claimed they erred in their diagram of §33.02 and shifted to another argument.
>
> * * *
>
> The Class dissected §33.02 differently than it did in their summary judgment papers thereby acknowledging that they overstated the application of §33.02. They included words and punctuation in their diagram of §33.02 during the summary judgment proceedings which were not present in the ordinance. In doing so, they advanced an argument that completely defeated their construction of §33.02 as the proper one because it would

result in the payment of prevailing wages on "*all*" construction projects approved by the city. When confronted with the erroneously broad interpretation of §33.02, they then claimed they erred in their diagram of §33.02 and shifted once again to another argument. They argued for the first time in the [sic] their Reply Brief that §33.02 is remedial in nature and should be interpreted in a manner that results in the payment of prevailing wages.

Appellees/Cross-Appellants' Reply Br. at 6, 14-15.

[16]    During summary judgment proceedings, the Defendants pointed out that the Class, in its brief in support of partial summary judgment, had *incorrectly* included a comma in quoting Section 33.02. *See* Appellants' App., Vol. III at 26. The Class, in their summary judgment reply brief, responded that it "was a typographical error, unnecessary to interpretation." *Id*. at 147. Now, in its motion to strike, the Class highlights its admission of its mistake and contends that it is "patently false to claim, as [the Defendants] now do, that the Class 'included words and punctuation in their diagram of § 33.02 during the summary judgment proceedings which were not present in the ordinance.'" Appellants/Cross-Appellees' Motion to Strike Portions of Appellees/Cross-Appellants' Reply Br. at 8.

[17]    Although the Class immediately acknowledged that it had incorrectly included a comma in Section 33.02, it did, in fact, add punctuation. And, to the extent that the Defendants argued the Class "included words" to Section 33.02, when viewed in the greater context of their argument on appeal, it becomes evident that Defendants do not allege that the Class *literally* added words to the

ordinance. Rather, the thrust of the Defendants' argument, as discussed further below, is that in order to arrive at the Class's desired interpretation of the ordinance, words must be *figuratively* added to the text. Thus, once again, we conclude the Defendants presented a good faith argument and we decline to strike the relevant portions of their Appellees/Cross-Appellants' Reply Brief.

## II. Summary Judgment

[18] The Class bought five claims against the Defendants: Count I: Breach of Contract; Count II: Violation of the Indiana Common Construction Wage Act; Count III: Violation of the Indiana Wage Statutes; Count IV: Request for Declaratory Relief; and Count V: (pleaded in the alternative) Unjust Enrichment/Quantum Meruit. Thereafter, the Class filed a motion for partial summary judgment on Count I: Breach of Contract and the Defendants filed a cross-motion for summary judgment as to all claims. The trial court denied the Class's motion for partial summary judgment, granted the Defendants' cross-motion for summary judgment as to Count V: Unjust Enrichment/Quantum Meruit,[5] and denied the Defendants' cross-motion for summary judgment in all other respects.[6] On appeal, both the Class and the Defendants argue the trial court erred in denying their respective motions for summary judgment as to Count I: Breach of Contract. Additionally, the Defendants argue the trial court

---

[5] Again, the trial court's grant of summary judgment in favor of the Defendants on Count V: Unjust Enrichment/Quantum Meruit is uncontested on appeal.

[6] Neither party puts forth specific argument regarding Count II: Violation of the Indiana Common Construction Wage Act.

erred in denying their cross-motion for summary judgment as to Count III: Violation of Indiana Wage Statutes.

## A. Standard of Review

Summary judgment is a tool which allows a trial court to dispose of cases where only legal issues exist. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party has the initial burden to show the absence of any genuine issue of material fact as to a determinative issue. *Id.* An issue is "genuine" if a trier of fact is required to resolve the truth of the matter; a fact is "material" if its resolution affects the outcome of the case. *Id.* As opposed to the federal standard which permits the moving party to merely show the party carrying the burden of proof lacks evidence on a necessary element, Indiana law requires the moving party to "affirmatively negate an opponent's claim." *Id.* (quotation omitted). The burden then shifts to the non-moving party to come forward with contrary evidence showing an issue to be determined by the trier of fact. *Id.* Although this contrary evidence may consist of as little as a non-movant's designation of a self-serving affidavit, summary judgment may not be defeated by an affidavit which creates only an issue of law—the non-movant must establish that material *facts* are in dispute. *AM Gen. LLC v. Armour*, 46 N.E.3d 436, 441-42 (Ind. 2015).

We review a summary judgment order with the same standard applied by the trial court. *City of Lawrence Util. Serv. Bd. v. Curry*, 68 N.E.3d 581, 585 (Ind. 2017). Summary judgment is appropriate only when "the designated

evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). As our supreme court has cautioned, however, summary judgment is a "blunt instrument" by which the non-prevailing party is prevented from resolving its case at trial and therefore we must carefully "assess the trial court's decision to ensure [a party] was not improperly denied [their] day in court." *Hughley*, 15 N.E.3d at 1003-04 (citations omitted). "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Id*. at 1004. And, notably, cross-motions for summary judgment do not affect our standard of review. We simply "constru[e] the facts most favorably to the nonmoving party in each instance." *Young v. City of Franklin*, 494 N.E.2d 316, 317 (Ind. 1986). "[E]ven if the facts are undisputed, summary judgment is inappropriate where the evidence reveals a good faith dispute as to the inferences to be drawn from those facts." *Boczar v. Reuben*, 742 N.E.2d 1010, 1017 (Ind. Ct. App. 2001).

[21] At the heart of this appeal is the interpretation and construction of a contract, which presents questions of law. *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014). As such, cases involving contract interpretation are particularly suitable for summary judgment. *Id*. And because the interpretation of a contract presents a question of law, it is reviewed de novo. *Jenkins v. S. Bend Cmty. Sch. Corp.*, 982 N.E.2d 343, 347 (Ind. Ct. App. 2013), *trans. denied*. When summary judgment is granted based on the construction of a written contract, the trial court has either determined that the

contract is not ambiguous or uncertain, or that any contract ambiguity can be resolved without the aid of a factual determination. *Cmty. Anesthesia & Pain Treatment, L.L.C. v. St. Mary Med. Ctr., Inc.*, 26 N.E.3d 70, 77 (Ind. Ct. App. 2015), *trans. denied*.

[22] We review the contract as a whole, attempting to ascertain the parties' intent and making every attempt to construe the language of the contract "so as not to render any words, phrases, or terms ineffective or meaningless." *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 501 (Ind. Ct. App. 2007). We assign a contract's clear and unambiguous terms their plain and ordinary meaning. *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005). When the terms of a contract are ambiguous or uncertain, however, and its interpretation requires extrinsic evidence, its construction is left to the factfinder. *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010). A contract is ambiguous if reasonable people would disagree as to the meaning of its terms, *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002), and we construe any ambiguity against the drafter, *MPACT Constr. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind. 2004).

## B.  The Class's Appeal:  Breach of Contract

[23] First, the Class argues there is no genuine issue of material fact as to their claim of breach of contract because the Defendants breached the Development Agreement by failing to pay prevailing wages.  Specifically, the Class argues they were a third-party beneficiary to the contract and that even if they were

not, Section 33.02 provides an "implicit private right of action."  Appellants' Br. at 26.  In turn, the Defendants argue the Class was never intended as a third-party beneficiary and that Section 33.02 is inapplicable to the facts presented.

[24]    "The elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages."  *Gared Holdings, LLC v. Best Bolt Prods., Inc.*, 991 N.E.2d 1005, 1012 (Ind. Ct. App. 2013) (quotation marks and citation omitted), *trans. denied*.  It is undisputed by the parties that the Development Agreement constitutes a contract, that it is authentic, and that Linkmeyer Development is a party to it.

### 1.  Third-Party Beneficiary

[25]    We turn first to consideration of whether the Class constitutes a third-party beneficiary of the contract.  As we explained in *Flaherty & Collins, Inc. v. BBR-Vision I, L.P.,*

> Generally, only those who are parties to a contract, or those in privity with a party, have the right to recover under a contract. However, an entity that is not a party to the contract may enforce the provisions of the contract by demonstrating that it is a third-party beneficiary thereto.  A third-party beneficiary contract is one in which the promisor has a legal interest in performance in favor of the third party and in which the performance of the terms of the contract between two parties must necessarily result in a direct benefit to a third party which was so intended by the parties.  A third party must show that it will derive more than an incidental benefit from the performance of the promisor.

In order to enforce a contract by virtue of being a third-party beneficiary, an entity must show (1) a clear intent by the actual parties to the contract to benefit the third party; (2) a duty imposed on one of the contracting parties in favor of the third party; and (3) performance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract. Among these three factors, the intent of the contracting parties to benefit the third-party is controlling.

990 N.E.2d 958, 971 (Ind. Ct. App. 2013) (quotations and citations omitted), *trans. denied.*

[26] The Class argues there is no need to analyze each factor because, "[i]t is generally recognized that employees of public contractors may sue as third-party beneficiaries for wages on a contract between the contractor and the public." Appellants' Br. at 25 (quoting *Ind. State Bldg. & Constr. Trades Council v. Warsaw Cmty. Sch. Corp.*, 493 N.E.2d 800, 805 (Ind. Ct. App. 1986)). Besides the fact that the *City* of Lawrenceburg was a party to the Development Agreement, however, the Class has not brought forth an argument that Linkmeyer Development was a *public* contractor. Regardless, the facts presented here would likely not support such an argument. *See* Ind. Code § 4-13.6 et seq.

[27] The primary issue here, then, is whether the City of Lawrenceburg and Linkmeyer Development intended the Development Agreement to benefit the Class. *See Barth Elec. Co. v. Traylor Bros.*, 553 N.E.2d 504, 506 (Ind. Ct. App. 1990) (noting that the controlling issue is whether it was the intent of the parties to a contract to benefit a third party). We begin, as always, with the plain

language of the contract, ensuring that we read the language in context and, "whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012). The relevant language of the Development Agreement states: "[Linkmeyer Development] shall comply with all appropriate codes, laws and ordinances *including the payment of prevailing wages for labor* as required by the State of Indiana and the City of Lawrenceburg." Appellants' App., Vol. II at 46 (emphasis added).

[28] The Defendants argue this is "merely boilerplate language," and "[n]either [Linkmeyer Development] nor the City of Lawrenceburg ever intended [Linkmeyer Development's] project to require the payment of prevailing wages[.]" Appellees/Cross-Appellants' Br. at 18. In support thereof, the Defendants designated several affidavits, including that of Mayor Cunningham, who stated:

> Linkmeyer Development II, LLC's project, as proposed by Steve Linkmeyer to the Economic Development Committee and as described in the Development Agreement, constituted a private development project and, as a private development project, no prevailing wages were required to be paid for Linkmeyer Development II, LLC's project.

Appellants' App., Vol. III at 55, ¶ 9.

[29] It is axiomatic, however, that where a contract's language is unambiguous, "this court may not look to extrinsic evidence to expand, vary, or explain the instrument but must determine the parties' intent from the four corners of the

instrument."[7] *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 839 (Ind. Ct. App. 2017), *trans. denied.* And, despite the Defendants' apparent argument to the contrary, "merely boilerplate language" still carries legal effect. *See Nixdorf Comput., Inc. v. Jet Forwarding, Inc.*, 579 F.2d 1175, 1179 (9th Cir. 1978) ("'Boilerplate' is, notwithstanding its reputation, language."). Moreover, unless a contract provides otherwise, it is implied that the parties intend to comply with all applicable statutes and city ordinances in effect at the time of the contract. *See, e.g., Homer v. Burman*, 743 N.E.2d 1144, 1147 (Ind. Ct. App. 2001).

[30] The Development Agreement unambiguously required that Linkmeyer Development "shall comply with all appropriate codes, laws and ordinances *including the payment of prevailing wages for labor* as required by the State of Indiana and the City of Lawrenceburg." Appellants' App., Vol. II at 46 (emphasis added). Therefore, if any such code, law, or ordinance, so required, the parties displayed "a clear intent . . . to benefit the third party[,]" *Flaherty &*

---

[7] As Judge Learned Hand famously explained over a century ago:

> A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent. If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort.

*Hotchkiss v. Nat'l City Bank*, 200 F. 287, 293 (S.D.N.Y. 1911), *aff'd* 201 F. 664 (2d Cir.), *aff'd* 231 U.S. 50 (1913).

*Collins, Inc.*, 990 N.E.2d at 971, and the Class has standing to sue under the Development Agreement.

## 2. Section 33.02

[31]     Next then, we turn to the question of whether any such code, law, or ordinance required the payment of prevailing wages for labor. It is uncontested that no state law required the payment of prevailing wages. Rather, the source of the parties' disagreement is an ordinance, namely Code of Lawrenceburg Section 33.02.

[32]     Before proceeding to the text of the ordinance, we note that we apply the same principles as those used for the construction of state statutes. *600 Land, Inc. v. Metro. Bd. of Zoning Appeals of Marion Cty.*, 889 N.E.2d 305, 309 (Ind. 2008).

> The first step in statutory interpretation is determining if the legislature has spoken clearly and unambiguously on the point in question. If a statute is clear and unambiguous on its face, no room exists for judicial construction. However, if a statute contains ambiguity that allows for more than one interpretation, it opens itself up to judicial construction to effect the legislative intent.
>
> If possible, every word must be given effect and meaning, and no part should be held to be meaningless if it can be reconciled with the rest of the ordinance. We are not at liberty to construe a facially unambiguous statute. However, if ambiguity exists, it is then open to construction to effect the intent of the legislature. Where ambiguity exists, to help determine the framers' intent, we must consider the statute in its entirety, and we must construe the ambiguity to be consistent with the entirety of the enactment. It is of the utmost importance to consider the ambiguous section

within the scope of the entire Act, as that allows us to better understand the reasons and policies underlying the Act.

We should also remember a cardinal rule of statutory construction, which is to ascertain the intent of the drafter. We can ascertain intent by giving effect to the ordinary and plain meaning of the language used.

*Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 828-29 (Ind. 2011) (citations and quotations omitted).

[33] Entitled "Contractors Required to Pay Prevailing Wages," Code of Lawrenceburg Section 33.02 provides:

On any construction project ***approved by the Lawrenceburg Development Corporation*** and financed in whole or in part by proceeds from sale of economic development bonds, grants ***or*** approved by or financed through any city agency, board, committee or commission, pursuant to an Investment Incentive Program, contractors retained to complete the project shall be required to pay the employed on the project wages equal to the prevailing wage customarily paid to each class of worker engaged in similar work in Lawrenceburg and surrounding areas.

('94 Code, § 33.02) (Ord. 1-1986, passed 4-7-86)

(Emphasis added.)

[34] The parties' competing interpretations of Section 33.02 center around the ordinance's use of the adverbial clause, "approved by the Lawrenceburg Development Corporation[,]" the conjunction "or," and the lack of a serial, sometimes called Oxford, comma preceding the "or"—as emphasized above.

[35]     The Defendants argue that for the ordinance to apply, the construction project must be approved by the Lawrenceburg Development Corporation *and* the construction project must be "financed in whole or in part by proceeds from sale of economic development [1] bonds, [2] grants *or* [3] approved by or financed through any city agency, board, committee or commission . . . ." Appellees/Cross-Appellants' Br. at 21 (emphasis added). Specifically, the Defendants contend:

> In a simpler form, the ordinance applies to any construction project:
> (1) approved by the Lawrenceburg Development Corporation, *and*
> (2) financed in whole or in part by
>     a. proceeds from sale of economic development bonds,
>     b. grants
>     c. or approved by or financed through any city agency, board, committee or commission, pursuant to an Investment Incentive Program.

*Id.*

[36]     Astutely observing that Section 33.02 is "hardly a model of legislative clarity," the Class suggests the ordinance should be interpreted as follows:

> On any construction project
> [A] approved by the Lawrenceburg Development Corporation
> and financed in whole or in part by
>     [1] proceeds from sale of economic development bonds,
>     [2] grants or
> [B] approved by or financed through any
>     [1] city agency,
>     [2] board,

     [3] committee, or
     [4] commission,
   pursuant to an Investment Incentive Program
   contractors retained to complete the project shall be required to
   pay the employed on the project wages equal to the prevailing
   wage customarily paid to each class of worker engaged in similar
   work in Lawrenceburg and surrounding areas.

Appellants' Br. at 30.  Viewing the ordinance as a whole, we agree with the

Class.

[37] First, Section 33.02 begins with a specific source of approval, "approved by the

Lawrenceburg Development Corporation[,]" and two specific forms of

financing, "financed in whole or in part by proceeds from sale of economic

development bonds, grants[.]"  But the ordinance then shifts to provide for

separate, more general sources of approval and financing, requiring simply that

the project be "approved or financed through *any* city agency, board, committee

or commission, pursuant to an Investment Incentive Program . . . ."  (Emphasis

added.)  This discrepancy suggests that what followed "or" was not simply

another item on a list to which the adverbial clause "approval by the

Lawrenceburg Development Corporation" equally applied, but rather an

alternative to the clause where approval or financing can come from "*any* city

agency, board, committee or commission," as long as that approval or financing was made pursuant to "an Investment Incentive Program."[8]

[38] Secondly, this interpretation of Section 33.02 is more consistent with the text of Section 33.01. As our supreme court has instructed, "[s]tatutes relating to the same general subject matter are in pari materia [on the same subject] and should be construed together so as to produce a harmonious statutory scheme." *Klotz v. Hoyt*, 900 N.E.2d 1, 5 (Ind. 2009) (quotations omitted). Entitled "Employment Standards," Section 33.01 provides:

> On any construction project approved by the Lawrenceburg Development Corporation financed in whole or in part by proceeds from sale of Economic Development Bonds or approved by or financed through any city agency, board, committee, or commission, pursuant to an investment incentive program, the Economic Development Commission or the Community and Lawrenceburg Development Corporation shall recommend that the contractor set as a goal the employment of at least 50% of the worker hours on a craft-by-craft basis, to be performed by bona fide residents of the city or Dearborn County, and the employment of at least 10% minorities on a craft-by-craft basis.
>
> ('94 Code, § 33.01) (Ord. 1-1986, passed 4-7-86)

---

[8] Under this interpretation, "[o]n any construction project" remains as a series-qualifier, carrying forward to apply to each of the two clauses of the series. *See* Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts § 19 (2012) ("Series-Qualifier Canon: When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series.").

[39] Although Section 33.01 reads "approved by the Lawrenceburg Development Corporation financed in whole or in part by proceeds from sale of Economic Development Bonds or approved by or financed through any city [entity][,]" Section 33.02 reads, "approved by the Lawrenceburg Development Corporation *and* financed in whole or in part by proceeds from sale of Economic Development bonds, grants or approved by or financed through any city [entity][.]" (Emphasis added.) Without "and" or the addition of "grants[,]" Section 33.01 clearly applies to two different scenarios: (A) approval by the Lawrenceburg Development Corporation accompanied by financing from the sale of Economic Development Bonds *or* (B) approval or financing through a city entity. These sections clearly serve a similar purpose as Section 33.01 sets forth goals to hire local and minority labor while Section 33.02 requires the payment of prevailing wages to labor. Reading the ordinance as a whole, therefore, we can find no reason why Section 33.01 would make approval of the Lawrenceburg Development Corporation optional while Section 33.02 would make such approval mandatory. *See Adams v. State,* 960 N.E.2d 793, 798 (Ind. 2012) (noting "we read the statute as a whole, avoiding excessive reliance on a strict, literal meaning or the selective reading of individual words.").

[40] This interpretation also preserves the existence of the ordinance because the Lawrenceburg Development Corporation was dissolved on February 12, 1990. *See Eddy v. McGinnis*, 523 N.E.2d 737, 738 (Ind. 1988) (noting "[i]f there are two possible interpretations of the statute, and by one interpretation the statute

would be invalid but by the other valid, the Court should adopt the interpretation which will uphold the statute"); Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts § 5 (2012) (Presumption of Validity: "An interpretation that validates outweighs one that invalidates (ut res magis valeat quam pereat)"). If approval by the Lawrenceburg Development Corporation was a sine qua non to Section 33.02's application, as the Defendants contend, the Section 33.02 would have been a nullity since 1990. The City of Lawrenceburg recodified its ordinances in 1994 and an additional fifteen years passed between recodification and the signing of the Development Agreement in 2009. In the absence of the ordinance's repeal in the interim, we find additional cause to interpret the ordinance so as to preserve its validity.

[41] For all of these reasons, we read Section 33.02 to provide two, separate prerequisites for its application. That is to say, Section 33.02 requires the payment of prevailing wages on any construction project "[A] approved by the Lawrenceburg Development Corporation and financed in whole or in part by proceeds from sale of economic development bonds, grants *or* [B] financed through any city agency, board, committee or commission, pursuant to an Investment Incentive Program[.]" (Emphasis added.)

[42] Consistent therewith, the Class "proceeds under the second half of Section 33.02, subsection [B] as diagramed." Appellants' Br. at 30. The next requirement for Section 33.02's application then, is that the project must have been "approved by or financed through any city agency, board, committee or commission . . . ." The face of the Development Agreement states the contract

was made "pursuant to Order Resolution dated July __, 2009, which was duly passed by the Lawrenceburg City Council[.]" Appellants' App., Vol II at 103. Furthermore, the project was financed by a $3,000,000 loan from the City of Lawrenceburg. These facts clearly establish that the project was *both* approved by and financed through the city.[9]

[43] Finally, Section 33.02 required that the construction project was approved or financed by the city "pursuant to an Investment Incentive Program[.]" Although the capitalization of "Investment Incentive Program" indicates a defined term carrying special meaning, the Code of Lawrenceburg does not provide a corresponding definition. *See, e.g., Schane v. Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund Pension Plan*, 760 F.3d 585, 588 (7th Cir. 2014) (noting that a "term [was] capitalized as if it were a specially defined term, [but] it is not listed in the definitions section of the plan."). And the term "Investment Incentive Program" appears only one other time in the Code of Lawrenceburg and is left uncapitalized in Section 33.01. *Supra*, ¶ 38 ("pursuant to an investment incentive program").

---

[9] The Defendants further argue that the Class's interpretation would "create an absurdly broad application, requiring the payment of prevailing wages on the construction and remodeling of residential homes [because] the Building Code of Lawrenceburg [requires] the Building Commissioner . . . must approve the project and issue permits to the contractor or homeowner." Appellees/Cross-Appellants' Br. at 22. This argument, however, fails to consider the final prerequisite for the ordinance's application: that the construction project must have been approved or financed by a city agency "pursuant to an Investment Incentive Program[.]" Therefore, simply because the construction or remodeling of residential homes requires the *approval* of the building commissioner, Section 33.02 would not require the payment of prevailing wages.

Undefined words in a statute or ordinance are given their plain, ordinary, and usual meaning. *600 Land, Inc.*, 889 N.E.2d at 309. "In determining the plain and ordinary meaning of a term, courts may use English language dictionaries as well as consider the relationship with other words and phrases." *Id.* The terms "investment incentives" are broadly defined as:

> inducements offered by the government or local authorities to encourage capital investment by the private sector either generally or in a specific area. Government inducements may take the form of capital grants towards the cost of equipment or tax reliefs on any profits earned. Local authority inducements usually take the form of reductions or exemptions from local taxes and organizing the local infrastructure for the convenience of potential investors. The rationale for such incentives depends primarily upon the government's objectives. It may want to increase economic growth and reduce unemployment, in which case investment through the multiplier effect will help, or it may want to give certain assisted areas additional help in tackling local problems of unemployment or urban renewal.

Collins Dictionary of Economics (4th ed. 2005) (emphasis and parentheticals omitted).

In the absence of a specific definition of an investment initiative program, the Class argues the "sweetheart loan" of $3,000,000 and the "gratuitous transfer of 21.5 acres" from the City of Lawrenceburg to Linkmeyer Development was intended to be an "investment incentive." Appellants' Br. at 40. Although we agree that such generous terms could be fairly characterized as an investment incentive, Section 33.02 includes additional requirements that the construction project be approved or financed by the city "*pursuant to* an Investment Incentive

*Program*[.]" (Emphasis added.) Black's Law Dictionary defines "pursuant to" as "[i]n compliance with; in accordance with; under" or "[a]s authorized by." (10th ed. 2014). The word "program" in this context is commonly defined as "a plan or system under which action may be taken toward a goal." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/program (last visited January 4, 2019). Therefore, read as a whole, we conclude Section 33.02 required more than simply an investment incentive that benefited the area. The City of Lawrenceburg must have approved or financed the construction project pursuant to a specific investment incentive program. One such investment incentive program in place at the time of the Development Agreement can be found in Indiana Code section 5-28-24-2. The statute provides:

> The [Indiana Economic Development] corporation shall establish policies to carry out an investment incentive program. The purpose of the program is to provide grants and loans to counties and municipalities that will, in turn, be loaned to certain new or expanding businesses for construction or for the purchase of real or personal property.

[46]     At this juncture, the Class has yet to designate evidence that the Development Agreement was approved or financed *pursuant to* Indiana Code section 5-28-24-2 or any other investment incentive program. The only evidence in the record is Mayor Cunningham's affidavit that he was:

> . . . unaware of any project approved or financed by a City agency, board, committee or commission pursuant to any

"Investment Incentive Program" while I served as Mayor or as
Council Member.

Appellants' App., Vol. III at 55, ¶ 12. The record further reflects that Mayor Cunningham was a signatory of the Development Agreement on behalf of the City of Lawrenceburg and he played a key role in its inception and subsequent approval. His testimony, therefore, is probative of whether the project was approved or financed pursuant to an investment incentive program.

[47] Although Mayor Cunningham's affidavit did not "affirmatively negate" the Class's claim and thus it did not satisfy the Defendants' burden on their own motion for summary judgment, *see Hughley*, 15 N.E.3d at 1003, it was sufficient to demonstrate the existence of a genuine issue of material fact. *See id.* Accordingly, we conclude the trial court correctly denied *both* parties' motions for summary judgment regarding breach of contract.[10]

## C. The Defendants' Cross-Appeal: Indiana Wage Claims/Wage Payment Statutes

[48] In addition to the breach of contract claim, the Class alleged the Defendants violated the Wage Payment Statute, Ind. Code § 22-2-5, *et seq.*, and the Wage Claims Statute, Ind. Code 22-2-9, *et. seq.*, by failing to pay prevailing wages and

---

[10] Because we conclude genuine issues of material fact remain regarding whether Section 33.02 applies to the Development Agreement, we need not address the Class's remaining arguments which are inextricably tied thereto. These arguments include whether Section 33.02 provides a private right of action and whether Bishoff and Linkmeyer are subject to personal liability. *See D.H. by A.M.J. v. Whipple,* 103 N.E.2d 3d 1119, 1134 n. 4 (Ind. Ct. App. 2018), *trans. denied*.

by failing to pay those wages in a timely manner. The Defendants' motion for summary judgment on this issue was denied by the trial court. The Defendants appeal that decision.

[49] In *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699 (Ind. 2002), the plaintiff, a doctor employed by St. Vincent Hospital, filed a complaint alleging breach of contract for failure to pay the full amount of compensation due under the terms of their agreement and for violation of the Wage Payment Statute. In determining whether the Wage Payment Statute or the Wage Claims Statute applied to Steele's claim, our supreme court explained:

> Although both the Wage Claims Statute and the Wage Payment Statute set forth two different procedural frameworks for wage disputes, each statute applies to different categories of claimants. The Wage Claims Statute references employees who have been separated from work by their employer and employees whose work has been suspended as a result of an industrial dispute. I.C. § 22-2-9-2(a), (b). By contrast, the Wage Payment Statute references current employees and those who have voluntarily left employment, either permanently or temporarily. I.C. § 22-2-5-1(b).

*Id.* at 704; *see also J Squared, Inc. v. Herndon,* 822 N.E.2d 633, 640 n. 4 (Ind. Ct. App. 2005) ("There is some confusion among the parties whether the Wage Claims Statute or the Wage Payment Statute applies. The former applies where . . . an employee is fired, and the latter applies where an employee quits."). The court in *Steele* ultimately concluded, "Because Dr. Steele was a current employee of St. Vincent at the time of the wage dispute, he proceeded correctly

under the Wage Payment Statute." *Id.* Later, in *Hollis v. Defender Sec. Co.*, 941 N.E.2d 536, 540 (Ind. Ct. App. 2011), *trans. denied*, a panel of this court held "that an employee's status at the time he or she files the claim is the relevant inquiry in determining whether to proceed under the Wage Payment Statute or the Wage Claims Statute."

[50] A key distinction between the Wage Payment Statute and the Wage Claims Statute is that the Wage Claims Statute requires the exhaustion of administrative remedies before the filing of a complaint with a trial court, *Hollis,* 941 N.E.2d at 538, while the Wage Payment Statute does not, *Walczak v. Labor Works-Ft. Wayne LLC*, 983 N.E.2d 1146, 1154 (Ind. 2013). On appeal, the Defendants argue that because the Class failed to exhaust their administrative remedies before filing their complaint, the Defendants are therefore entitled to summary judgment. However, the Defendants fail to argue—and the record is entirely absent of evidence—that the employees composing the Class were involuntarily separated from their employment. Therefore, we conclude the Defendants failed to establish they were entitled to summary judgment on this issue and the trial court did not err in denying such motion accordingly.[11]

---

[11] As with the other remaining claims, whether the Defendants violated the Wage Payment Statute, Ind. Code § 22-2-5-0.3, *et seq.*, is premised upon whether Section 33.02 applies to the Development Agreement. Therefore, because factual issues preclude summary judgment, we must similarly decline to address this issue.

# Conclusion

For the reasons set forth above, we decline to strike portions of the Defendants' Reply Brief and we conclude the trial court properly denied the parties' respective motions for summary judgment. Accordingly, we affirm and remand for further proceedings.

Affirmed.

May, J., concurs.

Baker, J., concurs in part and dissents in part with opinion.

| | |
|---|---|
| Bryan Alexander, Karl Cameron, William Love, Charlie Lovins, Kevin McMurray and Matt Oelker, *on behalf of themselves and all others similarly situated*, | Court of Appeals Case No. 18A-PL-311 |
| *Appellants/Cross Appellees-Plaintiffs,* | |
| v. | |
| Linkmeyer Development II, LLC, Steven Linkmeyer, and Brian Bischoff, | |
| *Appellees/Cross Appellants-Defendants,* | |

**Baker, Judge, concurring in part and dissenting in part.**

[1] Regarding the Class's breach of contract claim, I concur with the majority that the Class constitutes a third-party beneficiary of the contract. But I part ways with the majority's conclusion that a genuine issue of material fact exists as to whether the Class is entitled to the payment of prevailing wages. I believe that, as a matter of law, the Class is entitled to its claim and that the only genuine

issues of material fact that exist are whether the Class did the work to qualify for the prevailing wage and if so, what the prevailing wage was.

[2] The Development Agreement states that "Developer shall comply with all appropriate codes, laws and ordinances including the payment of prevailing wages for labor as required by the State of Indiana and the City of Lawrenceburg." Appellants' App. Vol. II p. 46. The City of Lawrenceburg's ordinance requires the payment of prevailing wages to those employed on any construction project financed by a city agency or similar entity pursuant to an investment incentive program. *See* § 33.02.

[3] Under the facts presented here—especially the fact that, under the Development Agreement, the City of Lawrenceburg extended a three-million-dollar line of credit with a two percent annual interest rate to Linkmeyer Development in return for work done on certain properties—there can be no dispute that the City of Lawrenceburg financed the construction. But the parties split hairs over the meaning of the phrase "Investment Incentive Program" found in section 33.02. And while the majority finds the parties' dispute over this phrase raises a genuine issue of material fact, I do not.

[4] The parties contest how this phrase should be interpreted. A question of statutory interpretation is a matter of law. *Nash v. State*, 881 N.E.2d 1060, 1063 (Ind. Ct. App. 2008). And summary judgment should be granted when the moving party deserved judgment as a matter of law. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016).

Neither party offered evidence of a formal "Investment Incentive Program" in the City of Lawrenceburg. Thus, I can only conclude that Section 33.02 refers generally to investment incentive programs that benefit the area, not to any one specific or official program. And, simply put, the Development Agreement acted as an investment incentive program for the City of Lawrenceburg. Specifically, the City of Lawrenceburg incentivized this development—the investment—by agreeing to finance it. The Defendants then performed work that benefitted the City of Lawrenceburg. If that does not constitute an investment incentive, I do not know what does.

Therefore, I would find that the Class is entitled as a matter of law to the payment of the prevailing wage, and that the only issues of material fact are whether the Class did the work to qualify for the prevailing wage and if so, what the prevailing wage was.