**William C. NASH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 33A01–0710–CR–457.

Court of Appeals of Indiana.

March 7, 2008.

John T. Wilson, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arturo Rodriguez II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant William C. Nash ("Nash") appeals his conviction and sentence for Battery By Body Waste, as a Class C felony.[1] We affirm.

### Issues

Nash raises two issues on appeal:

I. Whether there was sufficient evidence to support his conviction; and

II. Whether the trial court abused its discretion in failing to assign more weight to his mental illness as a mitigating circumstance.

### Facts and Procedural History

On March 20, 2006, Nash was an inmate in the New Castle Correctional Facility's mental health unit. Nash became very upset, claiming that he wanted to see the doctor and needed his medication. In re-

---

1. Ind.Code § 35–42–2–6(e)(1).

sponse to his requests, Robbin Blattner ("Blattner"), a nurse, examined Nash and submitted her findings to the doctor. The doctor reviewed Nash's chart and put Nash on the call list for the next day. When Blattner informed Nash, Nash became upset and threw a sandwich at Blattner through the cuff port [2] of his cell door. Later in the day, Nash called Blattner names and threatened to kill her children. The next time Blattner passed by Nash's cell Nash threw a cup of urine and feces at her, which landed on her shoes and on the box she was carrying.

An investigator, Joseph Rice ("Rice"), was called to the facility to write a report of the incident. When he arrived, Rice observed urine and feces on Blattner's shoes and equipment. Then Rice interviewed Nash. During the interview, Nash was in a four-way restraint plus chest strap per the orders of the facility's doctor. Rice read Nash his rights to which Nash responded that he understood. In explaining what happened, Nash said: "I did it. I threw it at her. I didn't get it in her face or nothing." State's Exhibit 8. When asked what he threw, he replied: "piss and sh* *. Listen sir, I have HIV and an STD from getting raped. She wouldn't help me so I threw it at her." *Id.* After discussing what assault with bodily fluids involved, Nash said, "Yea, what I did to that b* * * * nurse," and then laughed. *Id.* Rice described Nash's demeanor throughout the interview as congenial until Rice did not respond to Nash's question of whether there would be an "outside case" against him. Trial transcript at 56. Nash then stated, "You can't, I'm in mental health and I[']m not responsible for my action." State's Ex. 8.

The State charged Nash with Battery by Body Waste, as a Class C felony, based on knowingly or recklessly failing to know that the bodily fluid was infected with HIV. A jury found Nash guilty as charged. After the sentencing hearing, the trial court sentenced Nash to six years imprisonment.

Nash now appeals.

**Discussion and Decision**

*I. Sufficiency of the Evidence*

Nash presents two contentions regarding the sufficiency of the evidence. First, he argues that the State failed to prove that Blattner was a corrections officer. Second, he contends that the evidence does not establish that Nash acted with the requisite intent.

In addressing a claim of insufficient evidence, we do not reweigh the evidence nor do we reevaluate the credibility of witnesses. *Rohr v. State,* 866 N.E.2d 242, 248 (Ind.2007), *reh'g denied.* We view the evidence most favorable to the verdict and the reasonable inferences therefrom and will affirm the conviction if there is substantial evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

■ To convict Nash, as charged, the State had to prove that Nash knowingly or intentionally in a rude, insolent, or angry manner placed body fluid or waste on a corrections officer, Blattner, and that Nash knew or recklessly failed to know that the body fluid or waste was infected with HIV. *See* Ind.Code § 35–42–2–6(e). Indiana Code Section 35–42–2–6(a) defines a "corrections officer" to include persons employed by (1) the department of correction;

---

**2.** A cuff port is a little shelf in a prisoner's cell door through which inmates are handed their meal trays.

(2) a law enforcement agency; (3) a probation department; (4) a county jail; or (5) a circuit, superior, county, probate, city, or town court.

Blattner testified, in relevant part, as follows:

Q: Okay. Prior to being employed at Glen Oaks, did you have an occasion to be employed at the New Castle Correctional Facility here in New Castle?

A: Yes.

Q: What's your occupation?

A: I'm a nurse.

. . . .

Q: Okay. When you were working for, at the New Castle Correctional Facility, were you working for the State of Indiana or were you employed by somebody else?

A: CN . . .

Q: Pardon me?

A: Correctional, Correctional Medical Staffing or something like that. Q: Okay. So, it wasn't the State of Indiana, is that . . .

A: I don't—no, they weren't there anymore.

Q: Okay. How long were you employed at the Correctional Facility?

A: For that period of time, probably four months.

Tr. trans. at 31–32. Nash contends that because Blattner was not employed by the correctional facility, but by a staffing agency, that she does not fit the statutory definition of a corrections officer. This poses a question of statutory interpretation as to the meaning of "employed" in Indiana Code Section 35–42–2–6(a).

 A question of statutory interpretation is a matter of law. *Maynard v. State*, 859 N.E.2d 1272, 1274 (Ind.Ct.App. 2007), *trans. denied.* In such interpretation, the express language of the statute

and the rules of statutory interpretation apply. *Id.* We will examine the statute as a whole, and avoid excessive reliance on a strict literal meaning or the selective reading of words. *Id.* Where the language of the statute is clear and unambiguous, there is nothing to construe. *Id.* However, where the language is susceptible to more than one reasonable interpretation, the statute must be construed to give effect to the legislature's intent. *Id.* The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an absurd or unjust result. *Id.* Thus, we must keep in mind the objective and purpose of the law as well as the effect and repercussions of such a construction. *Id.*

Here, Nash asks us to interpret the phrase that a " 'corrections officer' includes a person employed by the department of correction" to be given the strict meaning that the person must receive his or her paycheck from the Department of Correction to fit this definition. We cannot ignore the absurd result of such an interpretation. The statute's objective is to deter persons from intentionally exposing, among others, those working at the state's correctional facilities to body waste. Nash's interpretation would distinguish between the personnel at the Department of Correction based on their employment status rather than the services they provide to the prisoners. Applying Nash's interpretation to the facts of this case, whether a prisoner is subject to prosecution under this statute is dependent on whether the facility where he or she is incarcerated directly employs its staff or obtains its personnel through a staffing agency. We do not believe that the legislature intended to distinguish Department of Correction personnel by the manner in which their services were obtained. The evidence is sufficient that Blattner was within the

class of personnel intended to be protected by the legislature in her employment status with the Department of Correction.

■ Nash's second argument as to the sufficiency of the evidence as to whether Nash acted with the requisite intent is simply a request that we reweigh the testimony. We will not do so. In Nash's interview with Rice, Nash admitted his action, stated that he did so knowing that he was HIV positive, and that he threw his body waste on Blattner because he felt that Blattner was not going to help him. From this, the jury could conclude that Nash knowingly or intentionally placed a body fluid or waste on a corrections officer.

## II. Sentence[3]

■ Next, Nash avers that the trial court abused its discretion in sentencing Nash to six years imprisonment because it gave little weight to his mental illness as a mitigating circumstance.

■ Sentencing decisions rest within the discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind.2007). As long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion occurs when the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quoting *K.S. v. State*, 849 N.E.2d 538, 544 (Ind.2006)). In *Anglemyer*, our Supreme Court noted a few examples of ways in which a trial court abuses its discretion:

> One way in which a trial court may abuse its discretion is failing to enter a

sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

*Id.* at 490–91. However, under the new advisory statutory scheme, the relative weight or value assignable to reasons properly found, or to those that should have been found, is not subject to review for abuse of discretion. *Id.* at 491.

Here, Nash contends that the trial court assigned an improper weight to his mental illness as a mitigating factor. However, this is not available for appellate review.

## Conclusion

In sum, there is sufficient evidence to support Nash's conviction for Battery by Body Waste, as a Class C felony. Nash's argument that the trial court did not assign enough weight to his mental illness as a mitigating circumstance is not an issue available for appellate review.

Affirmed.

NAJAM, J., and CRONE, J., concur.

---

**3.** Nash also makes a statement that his sentence is inappropriate. However, he does not make a separate argument supporting this contention as to how the evidence regarding the nature of the offense and the character of the offender demonstrates that his sentence is inappropriate. Accordingly, we do not review his sentence under Appellate Rule 7(B).