## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 30 2015, 8:14 am

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Mark Olivero
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

J.E.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 30, 2015

Court of Appeals Case No.
02A03-1409-CR-339

Appeal from the Allen Superior Court
Cause No. 02D04-1306-FC-211
The Honorable Frances C. Gull, Judge

**Bailey, Judge.**

# Case Summary

[1]     J.E. appeals the trial court's order of involuntary commitment to a state psychiatric hospital after a jury found him not responsible by reason of insanity on six criminal charges.  We affirm.

# Issues

J.E. presents one issue for our review, which we restate as the following two:

I.     Whether the trial court erred by ordering a regular commitment under Indiana Code chapter 12-26-7 when there was evidence that J.E. had previously been committed; and

II.    Whether there was sufficient evidence to support J.E.'s commitment to Logansport State Hospital, where a report required by Indiana Code section 12-26-7-3(b) was not included in the trial court record.

# Facts and Procedural History

On June 16, 2013, in Allen County, J.E. stole a car from a residential subdivision. In the process of fleeing, J.E. caused two car accidents, one with injury, at which he did not stop. Based on these events, on June 27, 2013, the State charged J.E. with the following: Battery, as a Class C felony;[1] Attempted Residential Entry, as a Class D felony[2] ("Count 2"); Auto Theft, as a Class D felony;[3] Receiving Stolen Auto Parts, as a Class D felony;[4] Criminal Recklessness, as a Class D felony;[5] Failure to Stop after an Accident Resulting

---

[1] Ind. Code § 35-42-2-1(a)(3) (2012). Due to substantial revisions to the Indiana Code effective July 1, 2014, this offense is now a Level 5 felony. Throughout this opinion, we refer to the versions of the statutes in effect at the time of J.E.'s offense.

[2] I.C. §§ 35-43-2-1.5 & 35-41-5-1.

[3] I.C. § 35-43-4-2.5(b)(1).

[4] I.C. § 35-43-4-2.5(c).

[5] I.C. §§ 35-42-2-2(b)(1) & (c)(2)(A).

in Injury or Death, as a Class A misdemeanor;[6] and Failure to Stop after an Accident Resulting in Damage to a Vehicle, as a Class C misdemeanor.[7] On September 6, 2013, the court dismissed Count 2 on the State's motion.

[4] On September 4, 2013, J.E. filed his notice of intent to assert the defense of insanity. The court appointed Dr. Kevin Wieland ("Dr. Wieland"), a psychologist, and Dr. Rebecca J. Mueller ("Dr. Mueller"), a psychiatrist, to conduct mental evaluations of J.E. for purposes of the insanity defense.

[5] On July 22, 2014, J.E.'s jury trial commenced. After the State's presentation of evidence, Drs. Wieland and Mueller testified regarding their evaluations. Dr. Wieland found that J.E.'s test results were consistent with a diagnosis of paranoid schizophrenia. Based on her interview, Dr. Mueller also settled on a likely diagnosis of schizophrenia, paranoid type. Both doctors opined that as a result of mental disease or defect, J.E. was, at the time of his offenses, unable to appreciate the wrongfulness of his conduct and insane within the meaning of Indiana Code section 35-41-3-6. The State also elicited testimony from Dr. Wieland that, in his opinion, long-term commitment would be in J.E.'s best interest in part because "it is likely that [J.E.] will stop medication on his own and his erratic behavior would again return." (Tr. 277.) Dr. Mueller concurred, noting that if J.E. "is un-medicated he may not only pose a risk to

[6] I.C. §§ 9-26-1-1 & 9-26-1-8(a).

[7] I.C. §§ 9-26-1-2 & 9-26-1-9.

himself but to other people." (Tr. 306.) Her written report expressed that J.E. "would benefit from re-admission to a state facility for more intensive treatment." (Tr. 229.)

[6] On July 23, 2014, the jury returned a verdict of not responsible by reason of insanity on all counts. Immediately following the verdict, the prosecution filed in open court a petition for involuntary commitment. The court set a hearing on the petition for August 29, 2014. The court then ordered an updated psychiatric evaluation of J.E., which Dr. Mueller completed on August 6, 2014. On August 29, 2014, the court held a hearing on the prosecuting attorney's petition. As permitted by Indiana Code section 35-36-2-4(b), the court took judicial notice of the evidence presented during J.E.'s trial. The court also reviewed Dr. Mueller's updated evaluation.

[7] At the conclusion of the hearing, the court found that the prosecuting attorney showed by clear and convincing evidence that J.E. was mentally ill and dangerous and, as a result of his mental illness, presented a substantial risk that he would harm himself or others. The court further found that J.E. was in need of custody, care, or treatment in a facility for a period expected to be more than ninety days. The court therefore ordered J.E. committed to a state institution, specifically Logansport State Hospital ("LSH"). By a letter dated September 4, 2014, the Indiana Family and Social Services Administration ("FSSA") designated LSH – Isaac Ray Unit as the appropriate facility for J.E.'s admission. (App. 188.) The court also ordered the clerk to open a mental

health cause number for his involuntary commitment. J.E. now appeals the trial court's order of involuntary commitment.[8]

# Discussion and Decision

## Standard of Review

[8] Following a verdict of not responsible by reason of insanity, the prosecuting attorney must file a written petition for civil commitment of the defendant under either Indiana Code section 12-26-6-2(a)(3) (temporary commitment) or chapter 12-26-7 (regular commitment). *See* I.C. § 35-36-2-4. Here, the prosecuting attorney filed the petition under the regular commitment statute, which governs proceedings for an individual who is (1) alleged to be mentally ill and either dangerous or gravely disabled; and (2) whose commitment is reasonably expected to require custody, care, or treatment in a facility for more than ninety days. I.C. § 12-26-7-1.

[9] A petitioner who seeks the civil commitment of an individual is required to prove by clear and convincing evidence that (1) the individual is mentally ill and either dangerous or gravely disabled, and (2) detention or commitment of that individual is appropriate. I.C. § 12-26-2-5(e). When reviewing a decision made under the statutory requirement of clear and convincing evidence, we will

---

[8] Although J.E. appeals only the trial court's order of involuntary commitment, the appeal was filed under the trial court cause number in J.E.'s criminal case.

affirm if, considering only the probative evidence and the reasonable inferences supporting it, without weighing or assessing witness credibility, a reasonable trier of fact could find the necessary elements proven by clear and convincing evidence. *In re Civil Commitment of T.K.*, 27 N.E.3d 271, 273 (Ind. 2015) (citation and quotation marks omitted).

[10] In this case, we are also called upon to interpret certain provisions of the regular commitment statute. As this Court has set forth:

> A question of statutory interpretation is a matter of law. In such interpretation, the express language of the statute and the rules of statutory interpretation apply. We will examine the statute as a whole, and avoid excessive reliance on a strict literal meaning or the selective reading of words. Where the language of the statute is clear and unambiguous, there is nothing to construe. However, where the language is susceptible to more than one reasonable interpretation, the statute must be construed to give effect to the legislature's intent. The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an absurd or unjust result. Thus, we must keep in mind the objective and purpose of the law as well as the effect and repercussions of such a construction.

*Nash v. State*, 881 N.E.2d 1060, 1063 (Ind. Ct. App. 2008) (citations omitted), *trans denied*.

### Section 12-26-7-2

[11] Here, the prosecuting attorney initiated regular commitment proceedings by filing a written petition in accordance with Indiana Code section 12-26-7-2(b)(8). Indiana Code section 12-26-7-2 provides:

(a) This section does not apply to the commitment of an individual if the individual has previously been committed under IC 12-26-6.

(b) A proceeding for the commitment of an individual who appears to be suffering from a chronic mental illness may be begun by filing with a court having jurisdiction a written petition by any of the following:

[. . . .]

(8) A prosecuting attorney in accordance with IC 35-36-2-4 [after a verdict of not responsible by reason of insanity].

I.C. § 12-26-7-2.

J.E. argues that the express language of Indiana Code section 12-26-7-2(a) prohibits the regular commitment under Section 12-26-7-2(b) of an individual who has previously been the subject of a temporary commitment under Chapter 12-26-6. Because J.E. was previously committed to LSH and Richmond State Hospital, he contends that he cannot now be committed under Section 12-26-7-2(b).[9]

In *In re Commitment of R.L.*, 666 N.E.2d 929 (Ind. Ct. App. 1999), R.L. was temporarily committed under Indiana Code section 12-26-6 following a brief emergency detention. *Id.* at 929-30. After less than ninety days of treatment in LSH, the hospital petitioned for an order of regular commitment, which the trial court eventually ordered. *Id.* at 930. On appeal, R.L. argued that the language of Section 12-26-7-2(a) expressly prohibited the regular commitment

_____

[9] As evidence of his prior commitments, J.E. points to trial testimony of Dr. Mueller, Dr. Wieland, and his father that he had been previously committed to LSH and Richmond State Hospital. It is not clear from the record whether these previous commitments were temporary under Indiana Code chapter 12-26-6 or regular under Chapter 12-26-7.

of an individual when that person was previously subject to temporary commitment under Chapter 12-26-6. *Id.*

[14]   In reviewing the statutory scheme as a whole, this Court found that Section 12-26-7-4 was helpful in interpreting the meaning of Subsection 12-26-7-2(a). *Id.* at 932. Section 12-26-7-4 provides that:

> (a) Upon receiving:
>> (1) a petition under section 2 [I.C. § 12-26-7-2] of this chapter; or
>> (2) a report under IC 12-26-6-11 that recommends treatment in a facility for more than ninety (90) days;
>
> the court shall enter an order setting a hearing date.

The Court interpreted Section 12-26-7-4 as authorizing two separate paths to regular commitment: (1) a formal petition filed under Section 12-26-7-2, or (2) a report under Section 12-26-6-11. *R.L.*, 666 N.E.2d at 932. The Court then explained the impact of Section 12-26-7-4 on Subsection 12-26-7-2(a):

> Recognizing that there are two independent avenues under I.C. § 12-26-7-4 from which the trial court can enter a regular commitment, the provision in I.C. § 12-26-7-2 that "this section" does not apply to those previously subject to a temporary commitment is logical. Ind. Code § 12-26-7-2 does not apply to an individual who previously had been temporarily committed because that individual would not be committed pursuant to a *petition* for regular commitment. Instead, that individual would be processed pursuant to the report filed during the individual's temporary commitment and on the recommendation of the facility superintendent or attending physician under I.C. § 12–26–6–11.
>
> *Id.*

[15]     We agree with this Court's interpretation of Section 12-26-7-2 in *In re R.L.*. When the statute is read as a whole, the mandate in Subsection (a) that "this section" does not apply to the commitment of an individual previously subject to a temporary commitment refers to commitment proceedings that will be initiated via a report, rather than a petition, because of a previous temporary commitment under Chapter 12-26-6. This interpretation harmonizes the temporary and regular commitment statutes and allows for a regular commitment to follow a temporary commitment, a situation that likely often occurs in the mental health field and for which the legislature logically would have provided.

[16]     Even if J.E. was, in the past, temporarily committed under Chapter 12-26-6, Subsection 12-26-7-2(a) does not bar the prosecuting attorney from filing a petition under Chapter 12-26-7-2(b) following a verdict of not responsible by reason of insanity. The trial court did not err in ordering J.E. committed under Chapter 12-26-7 based on the prosecuting attorney's petition.

### Sufficient Evidence

[17]     J.E. next argues that there was insufficient evidence to support the court's order of commitment to the Logansport State Hospital.

[18]     Following a hearing on a petition for regular commitment and review of the record, if the trial court finds the individual to be mentally ill and either dangerous or gravely disabled, the court may enter either of the following orders: (1) for the individual's custody, care, or treatment, or continued

custody, care, or treatment in an appropriate facility, or (2) for the individual to enter an outpatient therapy program. I.C. § 12-26-7-5(a). J.E. does not challenge the court's finding that he is mentally ill and dangerous. Nor does he argue that outpatient therapy would be a more appropriate alternative for treatment than custody in a facility.

[19] Rather, J.E. argues that there is insufficient evidence that LSH was an appropriate facility for his placement because the record does not contain a report from a community mental health center ("CMHC") as required by Indiana Code section 12-26-7-3(b). Section 12-26-7-3(b) provides:

> (b) Except as provided in subsection (d) [commitment to a research bed at Larue D. Carter Memorial Hospital], if the commitment is to a state institution administered by the division of mental health and addiction, the record of the proceedings must include a report from a [CMHC] stating both of the following:
>
> (1) The [CMHC] has evaluated the individual.
>
> (2) Commitment to a state institution administered by the division of mental health and addiction under this chapter is appropriate.

[20] I.C. § 12-26-7-3(b).[10] As used in Indiana Code title 12, a CMHC is a program of services that meets the following conditions:

---

[10] As a threshold matter, J.E. contends that there was no evidence presented that LSH is a state institution administered by the division of mental health and addiction ("DMHA") such that the reporting requirements of subsection (b) would apply to his case. By statute, DMHA "is responsible for administering . . . State institutions listed in IC 12-24-1-3." I.C. § 12-21-5-1(6). Section 12-24-1-3 includes LSH in its enumerated list of state institutions under the control and responsibility of the director of DMHA. *See* I.C. § 12-24-1-3(a)(4). Although no specific evidence was presented at J.E.'s commitment hearing about the administration of LSH, we think the presentation of such evidence was unnecessary because, by statute, LSH is a state institution administered by DMHA. The requirements of Section 12-26-7-3(b) thus apply to this case.

(1) Is approved by the division of mental health and addiction.

(2) Is organized for the purpose of providing multiple services for persons with mental illness or a chronic addictive disorder.

(3) Is operated by one (1) of the following or any combination of the following:

(A) A city, a town, a county, or another political subdivision of Indiana.

(B) An agency of the state.

(C) An agency of the United States.

(D) A political subdivision of another state.

(E) A hospital owned or operated by a unit of government described in clauses (A) through (D).

(F) A building authority organized for the purpose of constructing facilities to be leased to units of government.

(G) A corporation incorporated under IC 23-7-1.1 (before its repeal August 1, 1991) or IC 23-17.

(H) A nonprofit corporation incorporated in another state.

(I) A university or college.

I.C. § 12-7-2-38.

[21] J.E. contends, and the State concedes, that there is no report in the record from a CMHC stating that (1) J.E. was evaluated and (2) commitment to LSH was appropriate. He therefore argues that there was insufficient evidence to support the court's order of commitment to LSH.

[22] Under the statutory scheme set forth in Chapter 12-26-7, a petition for involuntary commitment must include a physician's written statement that (1) the physician examined the individual within the past thirty days, and (2) the physician believes that the individual is mentally ill and either dangerous or

gravely disabled, and in need of custody, care, or treatment in a facility for a period expected to be more than ninety days. I.C. § 12-26-7-3(a). After the trial court finds that a person is mentally ill and either dangerous or gravely disabled, the court may enter an order for placement in either an appropriate facility or an outpatient therapy program. I.C. § 12-26-7-5(a). Sections 12-26-7-3(b)-(e) require certain reports to support the court's placement depending on the facility to which the individual is committed.

[23] Based on the statutory scheme, we think the reporting requirement in Section 12-26-7-3(b) is a requirement designed to ensure that, after a determination that a person is mentally ill and either dangerous or gravely disabled, a trial court places the individual into a facility appropriately suited to address his or her mental health needs. In other words, "the purpose of the report requirement of Section 12-26-7-3(b) is to insure that . . . qualified persons have evaluated the individual and determined that commitment to a state institution is appropriate." *A.J. v. Logansport State Hospital*, 956 N.E.2d 96, 108 (Ind. Ct. App. 2011).

[24] We first observe that J.E. did not raise an objection at his hearing that placement at a state psychiatric hospital, specifically LSH, was inappropriate. Nor did J.E. object to the absence of the required CMHC report. More importantly, on appeal J.E. has failed to show how the absence of the report has prejudiced his substantial rights. *See* Ind. Trial Rule 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

[25] Despite the report's absence, there was ample evidence in the record showing that qualified persons evaluated J.E. and that a state psychiatric hospital is an appropriate facility for J.E.'s treatment. The evidence shows that J.E. has a "long standing history of mental illness," including a diagnosis of paranoid schizophrenia. (App. 224.) Results of tests administered by Dr. Wieland showed that J.E. has "some degree of adequate functioning while under the benefit of regular psychiatric medication" but that he had "significant difficulty managing his medications in the past." (App. 224.) Further, because "it is likely that [J.E.] will stop medication on his own and his erratic behavior would again return," Dr. Wieland opined that long-term commitment would be in J.E.'s best interest. (Tr. 277.) Dr. Mueller concurred, noting that if J.E. "is unmedicated he may not only pose a risk to himself but to other people." (Tr. 306.) Dr. Mueller's written report expressed that J.E. "would benefit from re-admission to a state facility for more intensive treatment." (Tr. 229.) In her updated psychiatric assessment, Dr. Mueller found that J.E. "continues with a mental state characteristic of a psychotic thought disorder" and that it "is in his best interest to be committed involuntary [sic] to a treatment facility for a period expected to be more than 90 days." (App. 233-34.) J.E. had previously been committed to both LSH and Richmond State Hospital.

[26] In addition, the record contains a letter from FSSA, which oversees DMHA, dated September 4, 2014, stating:

> We are in receipt of the Order dated August 29, 2014 civilly committing [J.E.] following a finding of Not Guilty by Reason of

Insanity. We are hereby designating Logansport State Hospital – Isaac Ray Unit as the appropriate facility to be admitted.

(App. 188.) As the State observes "[g]iven the requirement that the record include a report from a division-approved [CMHC], it is unlikely that [FSSA] would inform the trial court of [LSH's] designation as the appropriate facility for commitment . . . without the existence of a report." (Appellee's Br. 14.) Although the FSSA letter itself does not meet the requirements of Section 12-26-7-3(b), the letter indicates that J.E. was evaluated by qualified persons such that FSSA was able to designate LSH as the appropriate facility for his care and treatment.

[27]     This is not to say that the statutory reporting requirement should be readily disregarded or waived in cases of civil commitment. "Civil commitment is a significant deprivation of liberty that requires the petitioner to show 'that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior.'" *In re Commitment of Bradbury*, 845 N.E.2d 1063, 1065 (Ind. Ct. App. 2006) (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979)). For this reason, the commitment statutes provide a person who is the subject of an involuntary commitment proceeding a plethora of rights, including the right to a hearing and notice thereof. *See* I.C. §§ 12-26-7-4(c)-(d); 12-26-6.

[28]     Although the record in this case does not contain the report required by Indiana Code section 12-26-7-3(b), we are satisfied from the record before us that qualified persons evaluated J.E. and determined that commitment to a state institution was appropriate. Accordingly, we hold that there was sufficient

evidence to support the trial court's order committing J.E. to a state psychiatric hospital for treatment.

# Conclusion

[29] The trial court did not err in ordering regular commitment under Indiana Code section 12-26-7-2 where J.E. had a prior history of commitment. Sufficient evidence supported the trial court's order committing J.E. to Logansport State Hospital.

[30] Affirmed.

Riley, J., and Barnes, J., concur.