**FILED**

Oct 23 2019, 8:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Brian J. Johnson
Danville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Indiana Bureau of Motor Vehicles, | October 23, 2019 |
| *Appellant-Respondent,* | Court of Appeals Case No. 19A-MI-216 |
| v. | Appeal from the Marion Circuit Court |
| Thomas Douglass, | The Honorable Sheryl Lynch, Judge |
| *Appellee-Petitioner.* | The Honorable Mark Jones, Commissioner |
| | Trial Court Cause No. 49C01-1802-MI-6459 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, Indiana Bureau of Motor Vehicles (BMV), appeals the trial court's Order granting the Appellee-Petitioner, Thomas Douglass' (Douglass), petition for judicial review, in which he seeks to set aside his ten-year suspension of his driving privileges in Indiana and his habitual traffic violator (HTV) determination.

We reverse.

# ISSUE

BMV presents three issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court erred by granting Douglass' petition for judicial review.

# FACTS AND PROCEDURAL HISTORY

In 2014, Douglass was a resident of Marion County, Indianapolis, Indiana. At the time, Douglass had a valid driver's license. In May 2014, BMV initially issued Douglass a duplicate license and a permanent driver's license with an expiration date of March 1, 2018, which was mailed to his home on May 29, 2014. In June 2014, Douglass moved to California. After surrendering his Indiana driver's license on June 9, 2014, the California Department of Motor Vehicles (CA DMV) issued Douglass a California driver's license.

On August 20, 2014, BMV sent Douglass a letter to his last known address in Indianapolis. The letter was titled "Habitual Traffic Violator Notice of

Suspension" (Notice). The Notice informed Douglass that he had accumulated three qualifying driving-related convictions within a ten-year period and, as a result, he was deemed an HTV. Due to his HTV status, BMV informed Douglass that it was suspending his driving privileges for ten years beginning September 19, 2014. The Notice also informed Douglass that he could request an administrative review within eighteen days.

[6] Approximately three and one-half years later, on January 5, 2018, CA DMV sent a letter to Douglass' home in California stating, "[w]e regret to inform you that . . . [Indiana has] reported that your driving privilege is suspended or revoked." (Appellant's App. Vol. II, p. 9). CA BMV notified Douglass that unless it received a clearance from BMV, it would "cancel" his California driver's license within thirty days. (Appellant's App. Vol. II, p. 19).

[7] Although untimely, on January 23, 2018, through his attorney, Douglass wrote a letter to BMV requesting an administrative review of the HTV determination and the suspension of his driving privileges. In part, Douglass averred,

> Normal practice is for a person's new home state's drivers licensing authority to inform a person's prior home state that the person moved, in this case California should have notified Indiana in 2014 that effective June 9, 2014, [] Douglass was licensed in California. However, the remarks section of [] Douglass' driving record does not contain a notation that he moved to California and was licensed there.
>
> * * * *

An error occurred because Indiana imposed a suspension for []
Douglass when he was no longer an Indiana resident on
September 19, 2014. This error could have been avoided if
California had notified Indiana in June 2014 that [] Douglass had
moved to California. Nevertheless, the "home state" of
California is supposed to impose suspensions on its residents
based on their driving record. For example, I have had
numerous clients who moved to Illinois or Michigan, and those
states imposed [sic] suspensions for new residents based on the
new residents' driving violations that occurred out of state and
prior to moving to Illinois and Michigan. The same scenario
should have occurred here; meaning California instead of
Indiana had the authority to impose suspension or revocations
for [] Douglass starting June 9, 2014.

(Appellant's App. Vol. II, pp. 24-25).

[8] After conducting an administrative review, on January 30, 2018, BMV sent its
response to Douglass and his attorney, reiterating that Douglass had been
convicted of at least three prior driving-related offenses within the last ten years
and that qualified him as an HTV. BMV also determined, in part, that

At the time the suspension was imposed, the BMV had not
received notice that you moved out of state. However, because
you held an Indiana driver's license at the time of the qualifying
offenses, your driving privileges would still be suspended for
HTV even if the BMV did have notice. The BMV did not
suspend one specific credential, but rather your *driving privileges*
as required by law.

Your record has now been updated to reflect your move to
California based on the California driver's license that your
attorney provided.

(Appellant's App. Vol. II, p. 34). (italics in original). Concluding no "material error" existed in its Notice, BMV upheld the suspension of Douglass' driving privileges and the HTV determination. (Appellant's App. Vol. II, p. 34).

[9] On February 20, 2018, Douglass filed a verified petition for judicial review and motion for a preliminary injunction. A hearing on Douglass' motion for a preliminary injunction was conducted on March 5, 2018. On March 9, 2018, the trial court issued an order granting Douglass' preliminary injunction whereby it ordered BMV to "lift/stay the suspension noted in [Douglass'] driving record" until the resolution of the underlying cause. (Appellant's App. Vol. II, p. 45). A hearing on Douglass' verified petition for judicial review was held on August 22, 2018. On December 26, 2018, the trial court entered its findings of facts and conclusions thereon stating, in part, that:

> 4. Indiana is a member of the [I]nterstate [D]river's [L]icense [C]ompact. [Indiana Code section] 9-28-1-3 provides, in pertinent part:
>
> The driver's license compact is hereby enacted into law and entered into with all other jurisdictions joining therein in the form substantially as follows:
>
> ARTICLE 2 DEFINITIONS
>
> As used in this compact:
>
> (a) "State" means a state, territory, or possession of the United States, the District of Columbia, or the Commonwealth of Puerto Rico.

(b) "Home state" means the state which has issued and has the power to suspend or revoke the use of the license or permit to operate a motor vehicle.

(c) "Conviction" means a conviction of any offense related to the use or operation of a motor vehicle which is prohibited by state law, municipal ordinance, or administrative rule or regulation, or a forfeiture of bail, bond, or other security deposited to secure appearance by a person charged with having committed any such offense, and which conviction or forfeiture is required to be reported to the licensing authority.

ARTICLE 3 REPORTS OF CONVICTION

The licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted; describe the violation specifying the section of the statute, code, or ordinance violated; identify the court in which action was taken; indicate whether a plea of guilty or not guilty was entered, or the conviction was a result of the forfeiture of bail, bond, or other security; and shall include any special findings made in connection therewith.

* * * *

5. On June 9, 2014, California became [Douglass'] "home state", and Indiana became only a "party state" insofar as [Douglass] in [sic] concerned.

6. There is no authority for a party state to suspend the driver's license or driving privileges of someone whose privileges are

currently issued by another state, or in other words by that person's new "home state".

7. As a "party state", Indiana must report the record to [Douglass'] home state, California, "which shall give the same effect to the conduct reported, pursuant to Article 3 of this compact, as it would if such conduct had occurred in the home state . . ." Ind. Code § 9-28-1-3, Article 4.

8. At the time of BMV's suspension of [Douglass'] privileges, its records contained a material error in that [Douglass] no longer held an Indiana driver's license or driving privileges that were granted by Indiana, and in fact was (and is) a California residence and licensee.

9. BMV's failure to recognize its error and failure to recognize California's authority to grant driving privileges also constitutes a failure by BMV to give Full Faith and Credit to the California driving privileges given to [Douglass].

* * * *

11. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT the findings and suspension by BMV are unsupported by credible evidence, are arbitrary and capricious and violate the law, and are therefore hereby **VACATED AND REVERSED**. It is further **ORDERED** that BMV shall vacate its order finding that [Douglass] is a [HTV] and suspending [Douglass'] privileges. . .

(Appellant's App. Vol. II, pp. 9-11) (bold in original).

[10] BMV now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

BMV argues that the trial court erred by granting Douglass' petition for judicial review. Judicial review of an administrative decision is limited under the Administrative Orders and Procedures Act (AOPA). *Huffman v. Office of Envtl. Adjudication*, 811 N.E.2d 806, 809 (Ind. 2004). We may set aside an agency action only if it is

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

Ind. Code § 4-21.5-5-14(d). A trial court and an appellate court both review the decision of an administrative agency with the same standard of review. *Terkosky v. Indiana Dept. of Educ.*, 996 N.E.2d 832, 842 (Ind. Ct. App. 2013). We defer to the agency's expertise and will not reverse simply because we might have reached a different result. *Id.* The burden of demonstrating the invalidity of the agency action is on the party to the judicial review proceeding that is asserting the invalidity of the action. *Id.* (citing I.C. § 4-21.5-5-14(a)). Review of an agency's decision is largely confined to the agency record, and the court may not substitute its judgment for that of the agency. *Id.* We give deference to the administrative agency's findings of fact, if supported by substantial

evidence, but review questions of law *de novo*. *Id*. On review, we do not reweigh the evidence. *Id*.

[12] The interpretation of a statute presents a question of law. *Nash v. State*, 881 N.E.2d 1060, 1063 (Ind. Ct. App. 2008), *trans. denied*. If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Id*. If, however, the language is susceptible to more than one reasonable construction, we must construe the statute in accordance with apparent legislative intent. *Id*. The best evidence of legislative intent is the language of the statute, giving all words their plain and ordinary meaning unless otherwise indicated by the statute. *Chambliss v. State*, 746 N.E.2d 73, 77 (Ind. 2001). We will presume that the legislature intended the language used in the statute to be applied logically and to avoid an unjust or absurd result. *Nash*, 881 N.E.2d at 1063.

[13] The trial court granted Douglass' petition for judicial review after finding that "[a]t the time of BMV's suspension of [Douglass'] privileges, its records contained a material error in that [Douglass] no longer held an Indiana driver's license or driving privileges that were granted by Indiana, and in fact was (and is) a California resident and licensee." (Appellant's App. Vol. II, p. 11). The trial court further determined that "[t]here is no authority for a party state to suspend the driver's license or driving privileges of someone whose privileges are currently issued by another state, or in other words, by that person's new 'home state.'" (Appellant's App. Vol. II, p. 11).

[14] BMV asserts that the trial court erred by reversing its suspension of Douglass' driving privileges and HTV determination because Indiana law mandates the agency to suspend the driving privileges of a licensee for a period of ten years, in light of qualifying convictions. BMV also argues that the Interstate Driver's License Compact does not deprive a party state, in this case Indiana, of the power to suspend driving privileges even if the nonresident licensee has a valid driver's license issued by another state. In response, Douglass contends that BMV lacked authority to suspend his Indiana driving privileges since he was no longer a resident of Indiana, and only his home-state, California, had authority to suspend his driving privileges.

[15] This matter involves the interaction of two statutes, *i.e.*, the Indiana HTV and driving privilege suspension laws, and Interstate Driver's License Compact.

## II. *Indiana HTV and Driving Privilege Suspension Laws*

[16] Indiana Code section 9-30-10-4(b) provides in relevant part:

> A person who has accumulated at least three (3) judgments within a ten (10) year period for any of the following violations, singularly or in combination, and not arising out of the same incident, is a habitual violator[.]

[17] The qualifying judgments include: (1) operation of a vehicle while intoxicated; (2) operation of a vehicle with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per one hundred (100) milliliters of the blood or two hundred ten (210) liters of the breath; (3) operating a motor vehicle while the person's license to do so has been suspended or revoked; (4)

operating a motor vehicle without ever having obtained a license to do so; (5) reckless driving; (6) criminal recklessness involving the operation of a motor vehicle; (7) drag racing or engaging in a speed contest in violation of law; and (8) any felony under an Indiana motor vehicle statute or any felony in the commission of which a motor vehicle is used. I.C. § 9-30-10-4(b).

[18] Our Legislature has determined that before BMV suspends a person's driving privilege based on their HTV status, it must mail the notice of the suspension to the person's last known address. I.C. § 9-30-10-5(a). The notice must inform the driver that he may be entitled to administrative review through the BMV and that he may seek judicial review of BMV's determination. I.C. § 9-30-10-5(c). The suspension takes effect thirty days after BMV has mailed the notice. I.C. § 9-30-10-5(b).

[19] BMV contends that the trial court's decision was "wrong" because it is authorized under statute to "suspend the driving privilege of an HTV such as Douglass for 10 years" in light of qualifying judgments. (Appellant's Br. p. 13). We agree. The record shows that between October 1, 2007, and November 12, 2013, Douglass was convicted of three qualifying judgements, operating with an alcohol concentration of .08 or more, operating while intoxicated with a prior within five years, and operating while intoxicated. Based on these qualifying judgments and notwithstanding the fact that he had relocated to California and had established his residency, on September 19, 2014, BMV sent Douglass the Notice to his last known address in Indianapolis informing him that he was an HTV, and that it was suspending his driving privileges for ten years.

[20] Douglass is mistaken that BMV could not determine that he was an HTV and suspend his driving privileges since he was no longer an Indiana resident. The "primary purpose of suspending a person's driving privileges in Indiana for being an HTV is to remove from the highway those drivers who have proven themselves to be unfit to drive, and who pose a substantial threat to the safety of others." *Orndorff v. Ind. Bureau of Motor Vehicles*, 982 N.E.2d 312, 321 (Ind. Ct. App. 2012), *trans. denied*. Indiana Code section 9-14-8-3(3) vests authority to BMV to suspend or revoke the "current driving *privileges* or driver's license of any individual" upon "any reasonable ground appearing on [BMV's] records"

[21] As stated, Indiana Code section 9-30-10-4(b) provides that BMV may suspend the driving privileges of "*a person* who has accumulated at least three (3) judgments within a ten (10) year period" in Indiana. (Emphasis added). This section is clear and unambiguous, and it applies to both nonresident and resident drivers in Indiana. Moreover, Indiana Code section 9-25-3-2 provides, in part, that

> (a) *Whenever under Indiana law . . . , the [BMV] may suspend or revoke the driver's license or driving privileges of or forbid the operation of a motor vehicle in Indiana by an operator who is a nonresident.*

> * * * *

> (c) The [BMV] shall transmit to the motor vehicle bureau or state officer performing the functions of a bureau in the state in which a nonresident resides a certified copy of the following:

> (1) A conviction of, or an administrative action concerning, the nonresident that has resulted in the suspension of the nonresident's driving privilege in Indiana.

> (2) An unsatisfied judgment rendered against a nonresident that has resulted in the suspension of the nonresident's driving privilege in Indiana.

(Emphasis added). These three sections, read together, permit BMV to enforce its laws as to problematic drivers operating vehicles in Indiana regardless of residency.

[22] BMV also argues that it suspended Douglass' privileges based on his conduct occurring in Indiana and further claims that there is a difference between suspending a person's driver's license and driving privileges. "Driving privileges" means "the authority granted to an individual that allows the individual to operate a vehicle of the type and in the manner for which the authority was granted." I.C. § 9-13-2-48.3. "Driver's license" means any type of license issued by the state authorizing an individual to operate the type of vehicle for which the license was issued, and in the manner for which the license was issued, on a highway. I.C. § 9-13-2-48. Here, BMV correctly determined that Douglass was an HTV, and it rightfully suspended Douglass' driving privileges in Indiana and not his driver's license. Moreover, as we will discuss in the section below, under the Interstate Driver's License Compact, although Indiana lacked the authority to suspend his California license, nothing

under the Compact prevents BMV from enforcing its driving privilege suspension laws against nonresidents.

### III. *Interstate Driver's License Compact*

Indiana and California are party states to the Interstate Driver's License Compact. *See* I.C. § 9-28-1-3, Cal. Veh. Code, § 15000. Article 1 of the compact, which includes a declaration of policy, makes clear that the compact is intended to "promote compliance with the laws, ordinances and administrative rules and regulations relating to the operation of motor vehicles" in each of the party states, and to make the "reciprocal recognition" of the license to drive "more just and equitable" by considering compliance with the rules of the road as a "condition precedent" to the issuance or continuance of the license to drive. *See* I.C. § 9-28-1-3.

Article 2 of the compact defines the "home state" as "the state which has issued and has the power to suspend or revoke the use of the license or permit to operate a motor vehicle." I.C. § 9-28-1-3, Article 2. Article 3 of the compact addresses both the reporting obligation of a party state when a qualifying conviction occurs in that state, as well as the obligation of a licensing/home state in receipt of a report and it provides that:

> The licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted, describe the violation specifying the section of the statute, code or ordinance violated, identify the court in which action was taken,

indicate whether a plea of guilty or not guilty was entered or the conviction was a result of forfeiture of bail, bond or other security and shall include any special findings made in connection therewith.

[25] Article 4 of the compact, which addresses the effect of a conviction occurring out-of-state, provides that the home state's licensing authority receiving the report must give that out-of-state conviction the same effect as it would if that conduct occurred in the home state. I.C. § 9-28-1-3. Article 6 then states that nothing in the compact "shall be construed to affect the right of any party state to apply any of its other law relating to licenses to drive to any person or circumstance." I.C. § 9-28-1-3. To ensure an orderly exchange of information between states, Article 7 provides that the head of the licensing authority of a party state shall be the administrator of the compact for that state and shall furnish information to the administrator of each party state. I.C. § 9-28-1-3. Finally, Article 9, which addresses "construction and severability," directs that the compact shall be "liberally construed so as to effect the purposes thereof." I.C. § 9-28-1-3.

[26] The value of the compact in traffic safety is obvious. *See Matter of Johnson*, 226 N.J. Super. 1, 6, 543 A.2d 454, 456 (App. Div. 1988). The Interstate Driver's License Compact was developed to give states a means for cooperative action to control problem drivers. *Id*. Essentially, it provides for an orderly method for exchange of information to keep unsafe drivers from accumulating violations in many jurisdictions and escaping action on the part of the state in which the driver holds a license. *Id*. Indeed, drivers who commit serious traffic law

violations when away from home should not escape action by the state in which they are licensed. *Id.*

[27] BMV argues that the Interstate Driver's License Compact "does not deprive party States of the power to restrict nonresidents' driving privileges." (Appellant's Br. p. 9). Douglass counters BMV's claim by stating that he was a resident of California, California was his home state, and that CA DMV was the only licensing agency that could pursue an administrative action against him.

[28] In the definition section, the compact does not describe a "home state" as the state of residence, but rather, as "the State which has issued and has the power to suspend or revoke the use of the license or permit to operate a motor vehicle." I.C. § 9-28-1-3, Article 2. Following his move to California, Douglass surrendered his Indiana driver's license and was issued a California driver's license on June 9, 2014. At that point, Indiana was deprived of its home-state licensing status under the Interstate Driver's License Compact to suspend or revoke Douglass' driver's license. However, Indiana was not pursuing a license revocation with Douglass; rather, it was pursuing a suspension of Douglass' driving privileges in Indiana.

[29] BMV posits that the trial court's decision "suggests under this scenario," only California and not Indiana can suspend or revoke Douglass' driving privileges. (Appellant's Br. p. 15). Then citing Article 6 of the Interstate Driver's License Compact, BMV argues that "[n]othing in the compact requires this result."

(Appellant's Br. p. 15).  We are persuaded by BMV's interpretation of Article 6 of the compact which articulates that

> Except as expressly required by provisions of this compact, nothing contained herein shall be construed to affect the right of any party state to apply any of its other laws relating to licenses to drive to any person or circumstance, nor to invalidate or prevent any driver license agreement or other cooperative arrangement between a party state and a nonparty state.

I.C. § 9-28-1-3.  Additionally, Article 9 which addresses "construction and severability," directs, in part, that

> *This compact shall be liberally construed so as to effectuate the purposes thereof.*  The provisions of this compact shall be severable and if any phrase, clause, sentence, or provision of this compact is declared to be contrary to the Constitution of any party state or of the United States or the applicability thereof to any government, agency, person, or circumstance is held invalid, the validity of the remainder of this compact and the applicability thereof to any government, agency, person, or circumstance shall not be affected thereby.

I.C. § 9-28-1-3. (Emphasis added).

[30]    The language in Article 6 indicates that the compact is not intended to supersede the application of other—possibly more stringent—motor vehicle laws in Indiana.  It is illogical to presume that the legislature intended with the entry of the compact, that Indiana would not enforce its traffic laws against nonresidents.  Indeed, this court has held that the "statutes governing driving privileges 'promote highway safety [,]' which 'is a compelling state interest."

*Brown v. State*, 64 N.E.3d 1219, 1233 (Ind. Ct. App. 2016) (citations omitted). Indiana has a compelling interest in protecting its citizens from the dangers posed by intoxicated drivers who disobey Indiana traffic laws. BMV echoes this sentiment by arguing that "Douglas accumulated three drunk driving convictions in Indiana, and the BMV properly applied Indiana law to suspend his driving privileges." (Appellant's Reply Br. pp. 8-9).

[31] After having examined our HTV and driving privilege suspension laws and the Interstate Driver's License Compact, we agree with BMV's assertion that it had the right to pursue a suspension of Douglass' driving privileges even though he was a no longer a resident of Indiana. We therefore reverse the trial court's order canceling Douglass' HTV determination and the reinstatement of Douglass' driving privileges in Indiana. Our conclusion harmonizes with the legislative mandate of Indiana Code section 9-30-10-4 which authorizes BMV to determine that a person is an HTV and proceed in suspending a person's driving privileges in light of qualifying judgments. Moreover, nothing under the Interstate Driver's License Compact requires party states, such as Indiana, from enforcing its laws against a nonresident regardless of whether they have a valid license issued by their home-state.

## CONCLUSION

[32] Based on the foregoing, we reverse the trial court's order overturning Douglass' HTV determination and the reinstatement of Douglass' driving privileges in Indiana.

[33] Reversed.

[34] Vaidik, C. J. and Bradford, J. concur