

FILED

Dec 26 2019, 5:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Evan M. Comer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| K.C.G.,<br>*Appellant-Respondent,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner* | December 26, 2019<br><br>Court of Appeals Case No.<br>19A-JV-978<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Marilyn Moores,<br>Judge<br><br>The Honorable Geoffrey Gaither,<br>Magistrate<br><br>Trial Court Cause No.<br>49D09-1811-JD-1368<br>49D09-1901-JD-88 |

**May, Judge.**

[1] K.C.G. appeals his adjudication as a delinquent for committing Class A misdemeanor dangerous possession of a firearm.[1] He presents two arguments for our review, which we restate as:

> 1. Whether, based on the plain language of the juvenile delinquency statute pursuant to which the State alleged K.C.G. was a delinquent, any juvenile could be adjudicated a delinquent for committing Class A misdemeanor dangerous possession of a firearm; and
>
> 2. Whether the State presented sufficient evidence to support finding K.C.G. committed Class A misdemeanor dangerous possession of a firearm.

We affirm.

## Facts and Procedural History

[2] In January 2019, sixteen-year-old K.C.G. was on probation after his earlier adjudication as a delinquent for acts that, if committed by an adult, would be Class B misdemeanor possession of marijuana[2] and Class B misdemeanor leaving the scene of an accident.[3] As a condition of his probation, K.C.G. was ordered to: (1) not associate with D.S., the other juvenile involved in the earlier delinquent acts; (2) participate in the Day Reporting program; and (3) "not

---

[1] Ind. Code § 35-47-10-5(a).

[2] Ind. Code § 35-48-4-11(a).

[3] Ind. Code § 9-26-1-1.1(b).

possess or be around anyone in possession of a gun, rifle, shotgun, or other dangerous weapon, including ammunition or look-alike weapons." (State's Ex. 1.)

[3] On January 24, 2019, the probation department received a report that K.C.G. had threatened to bring either a bomb or a gun to the Day Reporting Center. Based on that report, the probation department conducted a search of K.C.G.'s home. In K.C.G.'s bedroom, the probation officer and a police officer found a .30-30 Marlin rifle on the floor. The rifle was partially covered by a shirt. The stock of the rifle was missing, and no ammunition was present. K.C.G. told the officers that D.S. had left the rifle at K.C.G.'s house prior to K.C.G.'s placement on probation. K.C.G. and his mother told the officers that she and K.C.G. believed the rifle was a BB gun. K.C.G.'s mother told officers that she had taken the rifle from K.C.G. but that he had retrieved it and brought it back to his bedroom.

[4] On January 25, 2019, the State filed a delinquency petition alleging K.C.G. committed Class A misdemeanor dangerous possession of a firearm. On February 6, 2019, the State filed a petition for modification of K.C.G.'s probation based in part on the dangerous possession allegation. K.C.G. denied all allegations and, on February 25, 2019, the juvenile court held a fact-finding hearing on the matter. The juvenile court subsequently entered a true finding of delinquency for committing Class A misdemeanor dangerous possession of a firearm, and it granted the State's request to modify K.C.G.'s probation. On

April 1, 2019, the juvenile court placed K.C.G. on a suspended commitment to the Department of Correction.

# Discussion and Decision[4]

## 1. Statutory Interpretation

Our standard of review for issues involving statutory interpretation is well-settled:

> A question of statutory interpretation is a matter of law. In such interpretation, the express language of the statute and the rules of statutory interpretation apply. We will examine the statute as a whole, and avoid excessive reliance on a strict literal meaning or the selective reading of words. Where the language of the statute is clear and unambiguous, there is nothing to construe. However, where the language is susceptible to more than one reasonable interpretation, the statute must be construed to give effect to the legislature's intent. The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an absurd or unjust result. Thus, we must keep in mind the objective and purpose of the law as well as the effect and repercussions of such a construction.

*Nash v. State*, 881 N.E.2d 1060, 1063 (Ind. Ct. App. 2008), *trans. denied*. When interpreting the language of a statute, "[w]ords and phrases shall be taken in their plain, or ordinary and usual, sense." Ind. Code § 1-1-4-1(1).

---

[4] We held oral argument in this case on November 25, 2019, at Tipton High School. We thank the school for its hospitality and counsel for their arguments.

[6] Here, we are asked to interpret two seemingly inconsistent statutes. When we are asked to perform such an analysis,

> before applying any other rule of statutory construction, we "should attempt to give effect to both [statutes] and *must* attempt to harmonize any inconsistencies or conflicts...." *Moryl* [*v. Ransone,*] 4 N.E.3d [1133,] 1137 [(Ind. 2014)] (citations omitted) (emphasis in original). If the two statutes are incompatible with one another, the most recent amendment controls and operates to repeal the earlier provision. *Id.* But "such implied repeal should be recognized only when a later act is so repugnant to an earlier one as to render them irreconcilable, and a construction which will permit both laws to stand will be adopted if at all possible." *Id.* (internal quotation omitted).

*Rodriguez v. State*, 129 N.E.3d 789, 796 (Ind. 2019).

[7] On appeal, K.C.G. argues that he cannot be adjudicated as a delinquent for dangerous possession of a firearm because juvenile delinquency adjudications require that a child commit a delinquent act that "would be an offense if committed by an adult." Ind. Code § 31-37-1-2. However, Class A misdemeanor dangerous possession of a firearm is a crime that cannot be committed by an adult, as the defining statute states: "A *child* who knowingly, intentionally, or recklessly possesses for any purpose other than the purpose described in section 1[5] of this chapter commits dangerous possession of a

---

[5] Indiana Code section 35-47-10-1 provides a number of situations under which a child cannot be found to have committed Class A misdemeanor possession of a firearm, including use of the firearm for hunting, at a shooting range, or with a parent's permission. The parties do not argue K.C.G. possessed a firearm under any of these conditions.

firearm, a Class A misdemeanor." Ind. Code § 35-47-10-5(a) (footnote and emphasis added). Thus, K.C.G. argues based on the plain language of the relevant statutes, he cannot be adjudicated a delinquent for committing Class A misdemeanor dangerous possession of a firearm.

[8] A decade ago, a panel of our court addressed this same issue in *C.C. v. State*, 907 N.E.2d 556 (Ind. Ct. App. 2009). In *C.C.*, our court examined whether a juvenile court committed fundamental error by exercising jurisdiction over a delinquency petition filed pursuant to Indiana Code section 31-37-1-2, which requires that a juvenile be adjudicated for an act that would be an offense if committed by an adult, when the alleged criminal act, as defined in Indiana Code section 35-47-10-5, was not a crime for which an adult could be charged . *Id*. at 558-9. The court reviewed the plain language of Indiana Code section 31-30-1-1, which confers original jurisdiction on the juvenile court and states, in relevant part, that a juvenile court has jurisdiction over:

> (1) Proceedings in which a child, including a child of divorced parents, is alleged to be a delinquent child under IC 31-37.
>
> * * * * *
>
> (8) Proceedings in which a child less than sixteen (16) years of age is alleged to have committed an act that would be a misdemeanor traffic offense if committed by an adult.
>
> (9) Proceedings in which a child is alleged to have committed an act that would be an offense under IC 9-30-5 if committed by an adult.

* * * * *

(14) Other proceedings specified by law.

Based on the plain language of Indiana Code section 31-30-1-1, the court determined C.C.'s case was an instance in which the juvenile court had original jurisdiction as set forth in Indiana Code section 31-30-1-1(14) over "other proceedings specified by law." *C.C.*, 907 N.E.2d at 559.

Further, the court stated:

> From a common sense standpoint, if we were to follow C.C.'s reasoning to its illogical conclusion, his misdemeanor violation of the firearm statute would not fall within the jurisdiction of either the juvenile court or the adult criminal court and thus would go unpunished. We do not think this was the legislature's intent. As the State points out, "[i]t is a rule of statutory interpretation that courts will not presume the legislature intended to do a useless thing or to enact a statute that is a nullity." *N. Indiana Bank and Trust Co. v. State Bd. Of Finance*, 457 N.E.2d 527, 532 (Ind. 1983).

*Id.*

As we are not bound by horizontal stare decisis, *see, e.g., Smith v. State*, 21 N.E.3d 121, 126 (Ind. Ct. App. 2014), K.C.G. urges us to follow language from *J.R. v. State*, wherein our Indiana Supreme Court expressed concern whether "dangerous possession of a firearm can serve as the basis for a delinquency petition." 100 N.E.3d 256, 257 n.1 (Ind. 2018). However, J.R. did not challenge the validity of his adjudication as a delinquent for Class A

misdemeanor dangerous possession of a firearm. Instead, he argued he was subjected to double jeopardy and the police search was unconstitutional. *Id.* at 257. As such, the language to which K.C.G. points is *dicta*, and does not require us to reach the result he requests. *See*, *e.g.*, *Koske v. Townsend Eng'g Co.*, 551 N.E.2d 437, 443 (Ind. 1990) ("[S]tatements not necessary in the determination of the issues presented are *obiter dictum*. They are not binding and do not become the law.") (emphasis in original).

[11] We presume "the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals." *State v. Oddi-Smith*, 878 N.E.2d 1245, 1248 (Ind. 2008). Here, the alleged conflict between Indiana Code section 35-47-10-5(a) and Indiana Code section 31-37-1-2 was resolved ten years ago. *See C.C.*, 907 N.E.2d at 559 (holding no conflict between statutes based on legislative intent). If *C.C.* had been an incorrect interpretation of the Legislature's intent, the Indiana State Legislature could have remedied the situation by passing a new statute in the intervening years.[6] This leads us to conclude the Indiana State Legislature's intent is evident – those under the age of eighteen may be adjudicated delinquents for offenses that would be crimes if committed by adults and for crimes that can be committed only by those under eighteen, and the language in Indiana Code section 31-3-1-2 does not preclude the enforcement of Indiana Code section 35-

---

[6] Similarly, our Indiana Supreme Court's footnote in *J.R.*, written over a year ago, could have also prompted the legislature to consider any incongruity between the statutes, and again it chose not to do so.

47-10-5(a). *See Perkinson v. Perkinson*, 989 N.E.2d 758, 763 (Ind. 2013) ("the failure of the Legislature to change a statute after a line of decisions . . . giving the statute a certain construction, amounts to an acquiescence by the Legislature in the construction given by the court") (quoting *Miller v. Mayberry*, 506 N.E.2d 7, 11 (Ind. 1987), *superseded by statute on other grounds*).

## 2. Sufficiency of the Evidence

[12] On review of a juvenile adjudication, we apply the same sufficiency standard used in criminal cases. *A.E.B. v. State*, 756 N.E.2d 536, 540 (Ind. Ct. App. 2001). We do not reweigh the evidence or judge the credibility of witnesses. *D.R. v. State*, 729 N.E.2d 597, 599 (Ind. Ct. App. 2000). Instead we look only to the evidence of probative value and the reasonable inferences that support the determination. *Id*.

[13] To prove K.C.G. committed Class A misdemeanor dangerous possession of a firearm, the State had to prove K.C.G., who is under eighteen years old, "knowingly, intentionally, or recklessly possess[ed] a firearm for any purpose other than a purpose described in section 1 of this chapter[.]" Ind. Code § 35-47-10-5(a). K.C.G. argues the State did not prove he intended to possess a firearm because: (1) he did not know it was a real firearm, and (2) he was unable to return the firearm to its owner, D.S., because he was prohibited from contacting D.S. as a condition of his previously-imposed probation.

[14] K.C.G. contends the State did not prove even the lowest level of culpability – recklessness, which requires his possession to be "in plain, conscious, and

unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind. Code § 35-41-2-2(c). He claims this level of culpability was not demonstrated because: (1) K.C.G. and his mother believed the item was a BB gun; (2) the item was "laying around there. Like it was any toy[,]" (Tr. Vol. II at 64); (3) the item was in plain sight in K.C.G.'s bedroom and not concealed; (4) the item was not loaded and there was no ammunition; and (5) upon the item's discovery, K.C.G. volunteered that D.S. had brought it to the home and that he intended to return the item to D.S. when the conditions of his probation were over.

[15] K.C.G.'s arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See D.R.*, 729 N.E.2d at 599 (appellate court cannot reweigh evidence or judge the credibility of witnesses). The State presented evidence a firearm was found in K.C.G.'s bedroom partially concealed by a shirt after K.C.G. told officers there were no weapons in his room. K.C.G.'s mother told officers that she knew K.C.G. had the firearm, she had taken it from him, and he had retrieved it from her bedroom and placed it in his bedroom, where it was found.[7] Based on the evidence most favorable to the adjudication, the State presented sufficient evidence to support K.C.G.'s adjudication for Class A misdemeanor dangerous possession of a

---

[7] Further, K.C.G.'s argument that he thought it was permissible for him to possess the gun because he did not know the gun was real rings hollow. He was prohibited from having weapons or look-alike weapons as a condition of his probation. *See Allen v. State*, 453 N.E.2d 1011, 1013 (Ind. 1983) (trial "court had no duty to believe defendant's self-serving statements[.]").

firearm. *See Gall v. State*, 811 N.E.2d 969, 975 (Ind. Ct. App. 2004) (affirming Gall's conviction of Class A misdemeanor possession of a firearm based on evidence that Gall was sixteen years old when he possessed a firearm that he did not have permission to possess), *trans. denied*.

# Conclusion

[16] Following our established holding in *C.C.*, we conclude a juvenile may be adjudicated for Class A misdemeanor dangerous possession of a firearm despite the fact that it is not a crime that can be committed by an adult as required by the juvenile adjudication statute. Additionally, the State presented sufficient evidence to support K.C.G.'s adjudication for Class A misdemeanor dangerous possession of a firearm. Accordingly, we affirm.

[17] Affirmed.

Baker, J., and Bradford, J., concur.