## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 28 2020, 10:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan H. Babb
Bose McKinney & Evans
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Todd A. Uzelac
Cole Galloway
Merrillville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ranger Team Building, LLC, *Appellant-Plaintiff,* | December 28, 2020 |
| | Court of Appeals Case No. 20A-PL-547 |
| v. | Appeal from the Lake Superior Court |
| Vince Caccavale, *Appellee-Defendant.* | The Honorable Thomas W. Webber, Judge Pro Tempore |
| | Trial Court Cause No. 45D10-1703-PL-20 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Plaintiff, Ranger Team Building, LLC (Ranger), appeals the denial of its motion to correct error following the trial court's reconsideration and reversal of its grant of summary judgment in favor of Ranger and against Appellee-Defendant, Vince Caccavale (Caccavale).

We reverse and remand for further proceedings.

# ISSUE

Ranger presents the court with three issues, one of which we find to be dispositive and restate as: Whether the trial court abused its discretion when it reversed its previous summary judgment which was partially based on evidence presented at the damages hearing.

# FACTS AND PROCEDURAL HISTORY

Ranger is a limited liability company wholly owned by Marc Kapsalis (Kapsalis). On December 8, 2016, Ranger, as seller, and Caccavale, as buyer, entered into a purchase agreement (Purchase Agreement) for the sale of an approximately thirteen-acre parcel located in rural Starke County for $57,500. The Purchase Agreement contained the following relevant provisions:

> JUDGE FLOOD AREA/OTHER: If the property is located in a flood plain, Buyer may be required to carry flood insurance at Buyer's expense. Revised flood maps and changes to Federal law may substantially increase future flood insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood insurance agents regarding

the need for flood insurance and possible premium increases. Buyer **X may** __ **may not** terminate this Agreement if the Property requires flood insurance. Buyer **X may** __ **may not** terminate this Agreement if the Property is subject to building or use limitations by reason of the location, which materially interfere with Buyer's intended use of the Property.

K. INSPECTIONS: (Check appropriate paragraph number)

Buyer has been made aware that independent inspections disclosing the condition of the property are available and has been afforded the opportunity to require such inspections as a condition of this Agreement.

**X** 1. BUYER <u>WAIVES THE RIGHT</u> TO HAVE INDEPENDENT INSPECTIONS

Buyer WAIVES inspections and relies upon the condition of the Property based upon Buyer's own examination and releases the Seller, the Listing and Selling Brokers and all licensees associated with Brokers from any and all liability relating to any defect or deficiency affecting the Property, which release shall survive the closing. Required FHA/VA or lender inspections are not included in this waiver.

(Appellant's App. Vol. II, p. 37). The Purchase Agreement also provided that the prevailing party in any legal dispute or equitable proceeding brought in connection with the Purchase Agreement would be entitled to attorney's fees and court costs from the non-prevailing party.

[5] The sale's closing date was set for January 30, 2017. After the parties executed the Purchase Agreement but before the closing date, Kapsalis allowed

Caccavale to have a soil inspection done on the property. The soil inspector, Larry Huber (Huber), concluded that the property was forested wetlands and that the Starke County Health Department would not issue a permit for a septic system necessary for Caccavale to construct a home on the property. Through his buyer's agent, Wade McGee (McGee), Caccavale tendered Ranger a mutual release from the Purchase Agreement. Ranger declined to execute the release. Caccavale did not attend the scheduled closing on the property.

[6] On March 13, 2017, Ranger filed a complaint in the Lake Superior Court, Civil Division 6, claiming breach of contract. Ranger sought specific performance of the Purchase Agreement, damages, and attorney's fees. On July 13, 2017, Ranger filed a motion for summary judgment, designation of evidence, designation of material facts, and memorandum of law. On October 12, 2017, Caccavale filed his response to Ranger's summary judgment motion as well as a cross-motion for summary judgment, "supplemental" designation of evidence, and memorandum of law. (Appellant's App. Vol. II, p. 58). On January 3, 2018, Ranger filed its response to Caccavale's summary judgment motion, objections to Caccavale's summary judgment exhibits, additional exhibits responding to Caccavale's summary judgment motion, and an additional designation of the issues of material fact. On May 3, 2018, Ranger supplemented its response with an additional affidavit by Kapsalis which does not appear to be in the record before us. On June 15, 2018, Caccavale filed a reply, and on July 13, 2018, Ranger filed its reply.

[7] On August 30, 2018, the Honorable John Pera held a hearing on the parties' cross-motions for summary judgment. Ranger acknowledged at the hearing that Kapsalis had allowed Huber to inspect the property's soil prior to the closing. Consistent with its written arguments and designations, Ranger argued that Sec. J is strictly a flood plain provision that only permits recission of the contract if the property requires flood insurance or if the buyer's intended use is subject to building or use limitations by reason of its location *in a flood plain*. Ranger also argued that Caccavale had waived his right in Sec. K to an inspection and released Ranger from liability for any defects based on the condition of the property, such as the condition of the soil. Consistent with its written arguments and designations, Caccavale argued that the 'building or use limitations' language in Sec. J provided a second avenue for contract rescission that does not depend on the property being in a flood plain and that Sec. K only applies to improvements on the property, which included a pole building.

[8] At the conclusion of the hearing, Judge Pera issued his oral ruling granting summary judgment in favor of Ranger and denying Caccavale the same. Judge Pera concluded that the language of the Purchase Agreement was clear and unambiguous. Judge Pera adopted Ranger's position that Sec. J of the Purchase Agreement is strictly a "flood plain provision" and that the 'building or use limitations by reason of its location' language must be read in that context. (Transcript p. 32). Finding that no evidence had been presented that the property was located in a flood plain or that Caccavale's intended use of the property had been subject to building or use limitations by virtue of the property

being located in a flood plain, Judge Pera concluded that Caccavale was not entitled to rescind the Purchase Agreement. Judge Pera also concluded that Caccavale had waived his right to independent inspections in Sec. K. Judge Pera reserved ruling on the specific performance sought by Ranger and discussed a briefing schedule on that issue with the parties. The written order on the rulings issued later that day by Judge Pera provided as follows:

> The [c]ourt reserves ruling on [Ranger's] requested remedy of specific performance and ORDERS the parties brief the issue according to the following schedule:
>
> * * * *
>
> Upon ruling on the appropriate remedy, the [c]ourt will enter its Final Judgment with respect to Summary Judgment.

(Appellant's App. Vol. III, p. 241).

[9] The parties briefed the issue of remedy. In his brief, Caccavale argued against specific performance of the Purchase Agreement and that the trial court had incorrectly granted summary judgment to Ranger. Caccavale re-asserted his summary judgment argument that Sec. J of the contract constituted legal cause for nonperformance of the contract "because Starke County would not issue a septic permit. In the alternative, this is an issue of material fact which is not contradicted. If so, it is a matter for trial." (Appellant's App. Vol. IV, p. 51). In its reply, Ranger argued that Caccavale was merely attempting to re-litigate the summary judgment ruling. On January 10, 2019, Judge Pera issued an order concluding that he had the authority to grant specific performance of the

Purchase Agreement and ordered that the matter be set for an evidentiary hearing to determine whether specific performance should be ordered and what, if any, damages should be found if the trial court declined to impose specific performance. Caccavale propounded a set of interrogatories to Ranger which Ranger moved the trial court to strike on the basis that they were only relevant to the matter of liability which had already been decided in Ranger's favor on summary judgment. The matter was next sent to mediation, which was unsuccessful.

[10] Between June 29, 2019, and July 18, 2019, Judge Pera left the bench, and the Honorable Thomas Webber became the pro tempore Judge presiding over this matter. On September 30, 2019, Judge Webber held the scheduled damages hearing. Kapsalis testified and on cross-examination answered questions regarding whether he had previously been denied a permit to install a septic system on the property. Over Ranger's relevancy objections, Williams, the Starke County Environmentalist, testified on behalf of Caccavale that state regulations govern the installation of septic systems in Indiana and that you cannot build a home in Starke County without having a permit for a septic system. Caccavale testified concerning the property that he "wanted to put a house out there also" and that he did not proceed with the sale because he could not build a home on the property. (Tr. p. 83).

[11] On October 23, 2019, Judge Webber issued an order entering summary judgment for Caccavale and dismissing the case. Before entering his findings of fact, Judge Webber noted that he found "the following facts have been

established by testimony of witnesses and documentation entered into evidence." (Appellant's App. Vol. IV, p. 114). Judge Webber also observed that he had reviewed Ranger's real estate listing documentation for the property, the Purchase Agreement, Ranger's listing agent's representation that Ranger's property was "a great space to build your dream home" which was filed by Caccavale as an exhibit during the summary judgment proceedings, McGee's affidavit, Huber's soil report, and Caccavale's tendered, but rejected, mutual release. (Appellant's App. Vol. IV, p. 115). Judge Webber then entered the following relevant findings of fact and conclusions thereon:

> 2. [The Purchase Agreement] was entered into by [Caccavale] as property which was intended to be used for the construction of his home.
>
> 3. Subject property was offered for sale as a "great" place to build a new home.
>
> 4. Subject property was found to be incapable of construction for residential purposes.
>
> * * * *
>
> 7. [Ranger] refused to terminate the [P]urchase [A]greement, even in view of . . . Section J to wit: [reproduces portions of Sec. J].
>
> 8. The [c]ourt further notes Section K titled "Inspections" and that [Caccavale] waived the inspection and the conditions that could terminate the Agreement.

9. [] Section J goes beyond the point of flood insurance to say "Buyer may terminate the agreement if the property is subject to building or use limitations by reason of the location, which materially interferes with Buyer's intended use of the Property." Clearly, the "Use Limitation" as specified by the Starke County authorities prohibits any residential construction on the subject property. It is the "Use Limitation" which is clearly the cause of termination of this [P]urchase [A]greement.

(Appellant's App. Vol. IV, pp. 115-16). Judge Webber determined that "clearly, the law prohibits building of a residential home" and "the location materially interferes with [Caccavale's] intended use of the property." (Appellant's App. Vol. IV, p. 116). Regarding Sec. K, the waiver provision, Judge Webber noted that it is "there; it is the governmental rules that prohibit the residential structure from being built on the property." (Appellant's App. Vol. IV, p. 116). Judge Webber reversed Judge Pera's grant of summary judgment to Ranger, entered summary judgment for Caccavale, and ordered that each party would be responsible for its own costs.

[12] On November 22, 2019, Ranger filed a motion to correct error in which it argued that its due process rights had been violated because it had no notice that Judge Webber would reverse Judge Pera's grant of summary judgment "based in part on a hearing where Caccavale ambushed Ranger with witnesses that went to the core of challenging Judge Pera's prior ruling on the merits." (Appellant's App. Vol. IV, p. 119). Ranger argued in favor of Judge Pera's interpretation of the Purchase Agreement and contended, in the alternative, that if Judge Webber's interpretation were to be accepted, genuine issues of

material fact existed precluding summary judgment, including Caccavale's intent in purchasing the property and whether a septic system could be built on the property. On December 6, 2019, the Honorable Gina Jones granted Caccavale an enlargement of time to respond. On January 17, 2020, Caccavale filed his response in opposition to the motion to correct error. On March 5, 2020, Judge Jones entered an order deeming Ranger's motion to correct error denied as of February 5, 2020.

[13] Ranger now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[14] This case is before us following the trial court's denial of Ranger's motion to correct error, which we will review for an abuse of discretion. *Santelli v. Rahmatullah*, 993 N.E.2d 167, 173 (Ind. 2013). In his motion to correct error, Ranger challenged the trial court's reconsideration of its grant of summary judgment. We review a trial court's reconsideration of a prior ruling for an abuse of discretion, which occurs only when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Celadon Trucking Servs., Inc. v. United Equip. Leasing, LLC*, 10 N.E.3d 91, 94 (Ind. Ct. App. 2014), *trans. denied*.

## II. *Reconsideration of Summary Judgment*

[15]  Judge Pera granted summary judgment to Ranger and denied summary judgment to Caccavale. Ranger contends that it was denied "due process" when Judge Webber reconsidered Judge Pera's grant of summary judgment without notice to Ranger and after a hearing where Caccavale's witnesses offered testimony relevant to challenging the merits of the summary judgment ruling. (Appellant's Br. p. 40). Ranger argues that it "had a right to rely upon Judge Pera's written and spoken directive" that the damages hearing "would be for the express and limited purpose of determining if the remedy of specific performance was available to Ranger and **not** for the purpose of revisiting his prior summary judgment order." (Appellant's Br. p. 41) (emphasis is Appellant's).

[16]  The Fourteenth Amendment of the federal Constitution prohibits the State from depriving a citizen of life, liberty, or property without the process or course of law that is due. *Branham Corp. v. Newland Resources, LLC*, 44 N.E.3d 1263, 1276-77 (Ind. Ct. App. 2015). Due process includes notice and an opportunity to be heard, and a litigant is denied due process if he is denied the opportunity to present his case to the trial court after the court has determined it would hear argument. *Bruno v. Wells Fargo Bank, N.A.*, 850 N.E.2d 940, 948 (Ind. Ct. App. 2006). Due process applies to the initial stages of a lawsuit and to the proceedings within the lawsuit. *Id*.

[17]  While we agree with Ranger's general proposition that due process applied to the August 30, 2018, hearing which had been scheduled as a damages hearing,

we cannot agree that the trial court denied Ranger due process when it reconsidered Judge Pera's grant of summary judgment following the August 30, 2018, hearing. Indiana Trial Rule 53.4 provides that reconsideration of a trial court's ruling may be initiated by "any party or the court" and expressly states that "[n]o hearing shall be required . . . upon motions to reconsider orders or rulings upon a motion." Trial Rule 54(B) provides in relevant part that, unless a trial court expressly enters judgment after finding that no just reason for delay exists,

> any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and *the order or other form of decision is subject to revision at any time before the entry of judgment* adjudicating all the claims and the rights and liabilities of all the parties.

(Emphasis added). Thus, Rules 53.4 and 54(B) provide a trial court with the authority to reconsider its rulings prior to the entry of final judgment. The Rules are our supreme court's recognition, through its rule-making authority, of the long-established principle that a trial court may reconsider, vacate, or modify any previous ruling if the case has not proceeded to final judgment. *See Mitchell v. 10th and The Bypass, LLC*, 3 N.E.3d 967, 971 (Ind. 2014) (recognizing a trial court's authority to reconsider previous rulings provided by Rule 54(B) citing precedent ranging from 1959 to 1998).

[18]     Here, Judge Pera granted Ranger summary judgment on the issue of liability but reserved the issue of damages for further proceedings. Judge Pera did not

expressly state in writing that he was entering final judgment on the issue of liability, and, thus, under Rule 54(B), that portion of the summary judgment was not final. *See also* T.R. 56(C) (providing that summary judgment on fewer than all the issues is interlocutory unless the trial court expressly enters final judgment in writing). Judge Webber reconsidered Judge Pera's summary judgment ruling on liability without providing notice to the parties of his intention to do so, which comports with the authority granted a trial court and the procedure outlined by the Trial Rules, which does not provide for notice and a hearing before a trial court invokes that authority. In addition, Ranger was provided with notice and an opportunity to be heard during the summary judgment proceedings before Judge Pera. Ranger does not address Rules 53.4 or 54(B), let alone argue that the Trial Rules themselves are unconstitutional. Therefore, we find no violation of Ranger's right to due process.

[19] Although we find no denial of due process, we conclude that we must remand based on other considerations. Trial Rule 56(C) imposes a thirty-day time limit for a party to designate evidence in response to a summary judgment motion. Our supreme court has held that, in order to reconcile a trial court's right to revise its rulings before final judgment with Rule 56's deadlines for designating evidence in summary judgment proceedings, when reconsidering a summary judgment ruling a trial court "may only consider the Rule 56 materials properly before it at the time the order was first entered." *Mitchell*, 3 N.E.3d at 973. In *Mitchell*, the trial court reconsidered and vacated its summary judgment ruling based on an employee's affidavit filed over a year after its summary judgment

ruling. *Id*. at 969-70. Concluding that this constituted an abuse of the trial court's discretion, our supreme court reversed the judgment of the trial court and remanded the "cause for further proceedings." *Id*. at 974.

[20] Here, much of the evidence relied upon by Judge Webber in reconsidering the grant of summary judgment to Ranger was designated during the summary judgment proceedings. However, Judge Webber's Order reversing the grant of summary judgment to Ranger and entering the same for Caccavale provided that "the following facts have been established by testimony of witnesses and documentation entered into evidence." (Appellant's App. Vol. IV, p. 114). The only witness testimony offered in this case was presented by Kapsalis, Williams, and Caccavale at the August 30, 2018, damages hearing. In light of *Mitchell*, Judge Webber abused his discretion in considering this testimony that was not designated during the summary judgment proceedings, and, therefore, the denial of Ranger's motion to correct error was also an abuse of discretion. Accordingly, we remand to the trial court for further proceedings. *See Mitchell*, 3 N.E.3d at 974.

[21] In remanding this matter to the trial court, we observe that the interpretation of a contract is a matter of law which we review de novo. *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 751 (Ind. 2018). We acknowledge that certain aspects of the instant matter present us with pure questions of law that would have been unaffected by Judge Webber's consideration of evidence received after the summary judgment proceedings; other aspects present mixed questions of law and fact. However, in deference to the trial court's discretion under the

Trial Rules to reconsider, or not to reconsider, its prior rulings, we will not construe the Purchase Agreement in order to allow the trial court to fully exercise that discretion.

# CONCLUSION

[22] Based on the foregoing, we conclude that the trial court abused its discretion when it denied Ranger's motion to correct error based on the reconsideration of the summary judgment ruling.

[23] Reversed and remanded for further proceedings consistent with this opinion.

[24] Altice, J. concurs

[25] May, J. concurs and dissents with separate opinion

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ranger Team Building, LLC,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Vince Caccavale,<br>*Appellee-Defendant.* | Court of Appeals Case No.<br>20A-PL-547 |

**May, Judge, concurring in part and dissenting in part.**

[26]    I concur with the majority's determinations that Ranger was not denied due process and that the trial court abused its discretion by denying the motion to correct error that challenged the trial court's reliance on improper evidence when reconsidering the earlier grant of partial summary judgment. I diverge, however, from the majority's decision to remand this case without addressing the merits of the underlying cross-motions for summary judgment.

Our standard of review directs us to review de novo a trial court's grant or denial of summary judgment. *See Alexander v. Linkmeyer Dev. II, LLC*, 119 N.E.3d 603, 611 (Ind. Ct. App. 2019) ("We review a summary judgment order with the same standard applied by the trial court."). Furthermore, at the heart of the disagreement between Ranger and Caccavale is language in a contract, and the construction of a contract is a question of law that we also review de novo. *Id*. at 612. I recognize that, as the majority explains, our Trial Rules give trial courts discretion to reconsider their earlier decisions prior to the entry of final judgment, *see Slip op*. at 12, and/or pursuant to a motion to correct error. *See* Ind. Trial Rule 59(J). Nevertheless, the decision the trial court would be reconsidering is whether "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We are in just as good a position as the trial court to review the evidentiary matter properly designated to the trial court and to resolve, as a matter of law, the meaning of the language in the Purchase Agreement. Accordingly, in the interest of judicial economy, I believe we should determine whether either of these parties is entitled to summary judgment or, if not, what genuine issues of material fact remain to be determined at trial.

The Purchase Agreement contained the following relevant provisions:

> **J. FLOOD AREA/OTHER:** If the property is located in a flood plain, Buyer may be required to carry flood insurance at Buyer's expense. Revised flood maps and changes to Federal law may substantially increase future flood insurance premiums

or require insurance for formerly exempt properties. Buyer should consult with one or more flood insurance agents regarding the need for flood insurance and possible premium increases. Buyer **X may** __ **may not** terminate this Agreement if the Property requires flood insurance. Buyer **X may** __ **may not** terminate this Agreement if the Property is subject to building or use limitations by reason of the location, which materially interfere with Buyer's intended use of the Property.

**K. INSPECTIONS: (Check appropriate paragraph number)**

Buyer has been made aware that independent inspections disclosing the condition of the property are available and has been afforded the opportunity to require such inspections as a condition of this Agreement.

**X** 1. **BUYER WAIVES THE RIGHT TO HAVE INDEPENDENT INSPECTIONS**

Buyer **WAIVES** inspections and relies upon the condition of the Property based upon Buyer's own examination and releases the Seller, the Listing and Selling Brokers and all licensees associated with Brokers from any and all liability relating to any defect or deficiency affecting the Property, which release shall survive the closing. Required FHA/VA or lender inspections are not included in this waiver.

__ 2. **BUYER RESERVES THE RIGHT TO HAVE INDEPENDENT INSPECTIONS (including Lead-Based Paint)**

Buyer reserves the right to have independent inspections in addition to any inspection required by FHA, VA, or Buyer's lender(s). All inspections are at Buyer's expense

(unless noted otherwise or required by lender) by licensed independent inspectors or qualified independent contractors selected by Buyer within the following time periods.

(Appellant's App. Vol. II at 19.)

I would hold, as a matter of law, that Section J of that Purchase Agreement contained two contingencies by which a buyer could terminate the contract. First, as indicated by the header "FLOOD AREA" and the option marked by the parties, a buyer could "terminate this Agreement if the Property requires flood insurance." (*Id.*) Second, as indicated by the portion of the header that states "OTHER" and the option marked by the parties, a buyer could "terminate this Agreement if the Property is subject to building or use limitations by reason of the location, which materially interfere with Buyer's intended use of the Property." (*Id.*) Because the header stated "OTHER" I would read the second contingency in Section J as separate from concerns about flooding,[1] such that a buyer would have the option to terminate the Agreement for location-based building or use limitations that materially interfere with a buyer's intended use of the property.

Furthermore, I would hold the inability to obtain a permit to install a septic system is a location-based building or use limitation, rather than a "condition of

---

[1] Accordingly, Ranger's discussion of the differences between a "wetland" and a "flood plain" are irrelevant. (*See* Br. of Appellant at 30-31.)

the Property" for which Caccavale waived the right to hire an inspector under Section K. While the Purchase Agreement may have been for an "unimproved" property, the Purchase Agreement itself indicates a "pole barn" existed on the property. (*See id.* at 146.) That Subsection 2 of Section K provides the option to have inspections "including Lead-Based Paints" suggests such inspections were of existing structures on the land, not for circumstances of the land's location that might impact the ability to obtain permits for future construction. (*Id*. at 22.)

[31] Ranger asserts on appeal that the water table issue should be considered a "condition" that required Caccavale to reserve his right to inspections under Subsection 2 of Section K so that Ranger would have had the opportunity to "cure" the defective condition. (*See* Br. of Appellant at 29.) Ranger claims it could have lowered the purchase price or brought in "truckloads of" sand or dirt. (*Id*.) However, I see little point to providing an opportunity to lower the price if, regardless the price, the building or use limitation "materially interfere[s] with Buyer's intended use of the Property." (Appellant's App. Vol. II at 19.) Nor does Ranger's willingness to bring in truckloads of soil provide any assurance that the controlling governmental authorities will thereafter issue the permit necessary for installation of a septic system and residence with functioning bathrooms.

[32] Having decided those two issues as a matter of law based on the language in the Purchase Agreement, I would remand this case for a trial on the three remaining genuine issues of material fact – (1) Caccavale's "intended use of the

Property" when he signed the Purchase Agreement, (*id*.); (2) whether the inability to obtain a septic permit "materially interfere[s]" with Caccavale's intended use, (*id*.); and (3) whether, in fact, a septic permit cannot be obtained. The evidence designated by the parties prior to Judge Pera's grant of summary judgment on August 30, 2018, which evidence confirms the existence of those genuine issues of material fact, included, in part, the following items. Caccavale designated an affidavit from Huber averring that the property is a wetland, that state and county regulations prohibit the issuance of a building permit for land where a septic system cannot be installed, and that the county does not issue septic permits for "wetland[,]" (*id*. at 60); an affidavit from Caccavale averring his "reason to buy the property was to build a retirement home," (*id*. at 62); the real estate listing for the property indicating the land was "[p]rime hunting ground or a great space to build your dream home[,]" (*id*. at 64); and an affidavit from Caccavale's real estate agent, Wade McGee, indicating the county building inspector confirmed a septic system would not be approved for the property. (*Id*. at 74.) In response, Ranger designated evidence indicating that the property had not been designated officially as a wetland, that a "mound septic system" might be possible on the property, (Appellant's App. Vol. III at 202), and that McGee's affidavit indicated he was helping Caccavale inspect "property of various amounts of acreage to be used for hunting and other outdoor recreational activities." (Appellant's App. Vol. II at 73.)

Because I would resolve the legal issues before us and remand the cause to the trial court for trial as to the three issues of material fact that remain to be determined, I concur in part and dissent in part.